T.C. Memo. 2011-88

UNITED STATES TAX COURT

JOAN THOMASSEN, DECEASED, MARK D. THOMASSEN, SPECIAL
ADMINISTRATOR, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21803-06.               Filed April 21, 2011.

Curtis W. Berner, for petitioner.

Kim-Khanh Thi Nguyen, for respondent.

MEMORANDUM OPINION

GALE, Judge: This case arises from a petition for review
pursuant to section 6015(e)[1] of respondent's denial of relief
under section 6015 with respect to original petitioner Joan

_____

[1]Unless otherwise noted, all section references are to the
Internal Revenue Code of 1986 as amended, and all Rule references
are to the Tax Court Rules of Practice and Procedure. All dollar
amounts have been rounded to the nearest dollar.

Thomassen's income tax liabilities for 1964 through 1971.[2]
Respondent determined that petitioner is not entitled to relief
under section 6015(b), (c), or (f) for any of those years.  We
conclude that petitioner is entitled to relief under subsection
(f) from the 1964, 1965, 1967, 1968, 1969, and 1970 liabilities,
but that she is not entitled to any relief under section 6015
from the 1966 and 1971 liabilities, as she did not file joint
returns for those years.

## Background

Some of the facts have been stipulated and are so found.  We
incorporate by this reference the stipulations of fact and
attached exhibits.  At the time the petition was filed,
petitioner resided in California.  The special administrator
currently resides in California.

I.   Petitioner's Education and Family Background

A.    Petitioner's Education

Petitioner received a college degree with a major in music
in 1950.  Petitioner took no courses in business, tax, or
accounting.

---

[2]The petition in this case was filed by Joan Thomassen.
Mrs. Thomassen died on Apr. 23, 2010, after trial and the filing
of briefs.  Mark D. Thomassen was thereafter appointed special
administrator of the Estate of Joan Thomassen and substituted as
petitioner for the purpose of maintaining this proceeding.  For
convenience, we shall hereinafter refer to Mrs. Thomassen as
petitioner.

B.    Petitioner's Marriage and Children

Petitioner and her husband, Elmer H. Thomassen (Dr. Thomassen),[3] who was deceased when petitioner sought section 6015 relief, were married in 1953 and remained so until Dr. Thomassen's death in April 2004. Dr. Thomassen was a devout Catholic who attended Mass almost daily. Petitioner converted to Catholicism in connection with her marriage. The Thomassens had 10 children, born between 1954 and 1975, 8 of whom they were raising during the years when the deficiencies at issue arose.

C.    The Thomassens' Employment and Finances

During the years at issue Dr. Thomassen maintained a successful practice as an orthopedic surgeon.[4] Petitioner was a homemaker and part-time professional cellist. Petitioner was not involved in any way with her husband's medical practice. Starting in 1964 and through the years in issue, petitioner played the cello professionally, and she was compensated for her performances. In 1970 and 1971 petitioner played in a summer festival 7 nights a week for 7 weeks. Starting in 1971, petitioner played with the Disneyland Orchestra.

---

[3]We will hereinafter refer to petitioner and her husband together as the Thomassens.

[4]In one of her submissions petitioner characterized Dr. Thomassen as making "good money" from his practice during the years in issue.

Dr. Thomassen controlled the family's finances. He made the decisions with respect to major purchases and investments. His office nurse paid the Thomassens' principal household bills. Dr. Thomassen gave petitioner money to pay miscellaneous household and family expenses, but the amounts he gave her were often insufficient. Rather than ask Dr. Thomassen for additional funds and risk his ire (see discussion under "Abuse" below), petitioner would borrow money from her mother or sell personal items to meet the shortfall. She also used her earnings from playing the cello for this purpose. The Thomassens had separate bank accounts. Petitioner deposited her cello earnings into her account. Petitioner had no credit cards. Dr. Thomassen never told petitioner his bank account balance or net worth.

D.   The Thomassens' Standard of Living and Expenditures

In 1957 the Thomassens purchased a single-family residence in Newport Beach, California (Newport Beach property), as joint tenants. They financed the acquisition with a mortgage loan, payments on which were made from income from Dr. Thomassen's medical practice during the years in issue. The Thomassens resided at the Newport Beach property continuously until Dr. Thomassen's death, and petitioner resided there afterwards. The original structure had three bedrooms and two bathrooms. Around 1960 the Thomassens added two rooms above the garage and a third bathroom.

During the years in issue the Thomassens paid for their children to attend private Catholic schools and to participate in various extracurricular activities. Their house was furnished frugally, a sofa being the only item of furniture purchased new during the years at issue. Around 1965 the Thomassens purchased a new motorhome for vacationing. The Thomassens traveled domestically, and every 3 years they traveled overseas to attend medical conferences. Sometime during their marriage but before 1972, Dr. Thomassen acquired four other parcels of real estate as investments, using earnings from his medical practice. These parcels were titled jointly in Dr. Thomassen's and petitioner's names.

The Thomassens' expenditures were paid primarily with income from Dr. Thomassen's practice although as noted some household expenses were paid with petitioner's earnings as a cellist.

E.   Abuse

During the years at issue petitioner was psychologically abused by Dr. Thomassen. Dr. Thomassen was subject to fits of rage and extremely controlling behavior,[5] which worsened as he came under increasing scrutiny from the Internal Revenue Service

---

[5]Dr. Thomassen would require his eldest son, while in private Catholic school, to arise every morning at 4 a.m. to perform various tasks, such as car repair. When Dr. Thomassen found any white bread or any product containing sugar in the household, he would discard it.

(IRS).[6] Dr. Thomassen experienced almost weekly outbursts. At some point he was diagnosed with bipolar disorder. Petitioner tried to please her husband to avoid triggering his outbursts.

As a consequence of his difficulties with the IRS, Dr. Thomassen was often sought out by process servers. He instructed the children not to answer the telephone or the door, so as to avoid process servers. One teenaged daughter, who was eventually diagnosed with bipolar disorder, inadvertently answered the door, contrary to Dr. Thomassen's instructions, resulting in the successful service of papers on her father. Faced with the prospect of his ire, she attempted suicide.

The Thomassens' eldest daughter, Marilyn Rose Thomassen (Marilyn), once invited college friends to come home with her for the weekend. The friends were so shocked after witnessing Dr. Thomassen's behavior for a few days that they urged Marilyn to find another place for petitioner and the other children to live. One friend observed that since petitioner had been subjected to Dr. Thomassen's behavior for her entire adult life, she probably did not realize anything was wrong.

Petitioner at one point sought counseling from her priest concerning Dr. Thomassen's behavior towards her. The priest counseled petitioner that she needed to be patient.

---

[6]Respondent began examining the Thomassens' income tax returns in 1959, and all of their returns for 1964 through 1971 were examined.

II.  Reporting, Assessment, and Collection Activities

    A.    Income Tax Returns Filed

The Thomassens filed delinquent joint Federal income tax returns for taxable years 1964, 1965, 1967, 1968, 1969, and 1970, all but one of which reported adjusted gross income of zero and no income tax liability for the year.[7]  Dr. Thomassen either prepared the returns himself or engaged someone to do so, and he presented them to petitioner for her signature.  Petitioner did not review the returns before signing them.

    B.    Notices of Deficiency

Respondent issued notices of deficiency to the Thomassens with respect to all of the years at issue, 1964 through 1971.  Only the notices covering 1969, 1970, and 1971 are in the

---

[7]None of the returns are in the record.  The parties have stipulated the filing of and filing dates for joint returns for all taxable years in issue except 1966 and 1971.  For all such years, the record also contains certified copies of Forms 4340, Certificate of Assessments, Payments, and Other Specified Matters.  After reserving objections in the stipulations to the admissibility of the Forms 4340, petitioner withdrew the objections at trial.

Account transcripts covering all years in issue except petitioner's 1966 taxable year are in the administrative record compiled in connection with petitioner's request for sec. 6015 relief.  The reported adjusted gross income for each year is recorded in the account transcript for that year and it corresponds to each Form 4340 in the record.

record.[8]  The notices for 1969 and 1970 were issued to the
Thomassens jointly.  Separate notices were issued to petitioner
and to Dr. Thomassen for 1971.

The notice of deficiency for 1969 determined a deficiency
based on the disallowance of business expenses claimed on the
Schedule C, Profit (or Loss) From Business or Profession, for
1969.  The notice stated that the Thomassens reported gross
receipts for 1969 as follows:

| | |
|---|---:|
| Wages, salaries, tips | $707 |
| Ordinary dividends | 73 |
| Capital gain dividends | 206 |
| Interest income | 367 |
| Schedule C business income | 172,417 |
| Rental income | 1,493 |
| Farm Schedule F income | 7,314 |
| Total gross receipts | 182,577 |

The notice also stated that the Thomassens claimed $222,661 in
business expense deductions.  The notice determined that, because
there was no substantiation of the reported expenses, the
Thomassens should be allowed a deduction for those expenses equal
to 42 percent of total gross receipts, or $76,682.

_____

[8]The 1969 notice is complete, but the record contains only
the first page of each of the 1970 and 1971 notices.  Petitioner
initially reserved an objection to the admissability of the 1969
notice of deficiency but withdrew the objection at trial.

The notice of deficiency issued jointly to the Thomassens for 1970 and the notices issued to each separately for 1971 are all dated January 25, 1974.  The 1971 notices determined deficiencies and additions to tax in amounts that were different for petitioner and Dr. Thomassen for that year.

C.    Deficiency Proceedings

The Thomassens filed three petitions in this Court with respect to the notices of deficiency for taxable years 1964 through 1971.  A petition at docket No. 5098-72 covered taxable years 1964 through 1968, a petition at docket No. 5337-73 covered taxable year 1969, and a petition at docket No. 2949-74 covered taxable years 1970 and 1971.  The three docketed cases were ultimately consolidated for purposes of trial.  On May 12, 1975, petitioner executed a power of attorney authorizing her husband to represent her before the Court with respect to all years at issue.[9]  During the proceedings Dr. Thomassen repeatedly advanced frivolous tax-protester arguments.  The central dispute in the litigation concerned Dr. Thomassen's refusal to provide substantiation of claimed expenses for his medical practice and other business activities because he contended that providing

---

[9]Petitioner attended the trial but allowed Dr. Thomassen to represent her pursuant to the power of attorney.  Respondent does not contend, nor do we find, that petitioner "participated meaningfully" in these prior deficiency proceedings within the meaning of sec. 6015(g)(2) so as to preclude her claim for sec. 6015 relief in this case.

financial records and information to the Government violated his constitutional rights and religious beliefs. On June 2, 1975, in the face of Dr. Thomassen's refusal to put on any evidence, the Court dismissed the cases for lack of prosecution and entered separate decisions in each of the three docketed cases sustaining the determined deficiencies and additions to tax in their entirety.[10] The decision in the case covering the years 1964 through 1968 held the Thomassens jointly liable for deficiencies and additions to tax for 1964, 1965, 1967, and 1968 and individually liable for deficiencies and additions to tax (in differing amounts) for 1966.[11] The decision in the case covering

---

[10]Copies of the three decisions are in the record. Petitioner reserved objections to the admissability of these documents in the parties' stipulations but withdrew the objections at trial.

[11]The decision in the case at docket No. 5098-72 states in part:

> ORDERED, that Respondent's motion is granted and this case is dismissed for lack of prosecution. It is further

> ORDERED and DECIDED: That there are deficiencies in income tax, together with additions to the tax due from the Petitioners, Elmer H. Thomassen and Joan C. Thomassen, for the taxable years ended December 31, 1964, 1965, 1967, and 1968, as follows:

ADDITIONS TO THE TAX
I.R.C. of 1954

| Year | Income Tax | Section 6653(a) |
|------|-----------|-----------------|
| 1964 | $19,553.39 | $977.67 |
| 1965 | $29,614.49 | $1,480.72 |

(continued...)

1969 held the Thomassens jointly liable for a deficiency and additions to tax for that year.[12]  The decision in the case

_____

[11](...continued)

| | | |
|---|---|---|
| 1967 | $28,342.24 | $1,417.11 |
| 1968 | $37,089.00 | $1,854.00 |

Further, that there is a deficiency in income tax, together with additions to the tax due from the petitioner Joan C. Thomassen for the taxable year ended December 31, 1966, as follows:

ADDITIONS TO THE TAX
I.R.C. OF 1954

| Year | Income Tax | Section 6651(a) | Section 6653(a) |
|---|---|---|---|
| 1966 | $12,453.10 | $3,113.27 | $622.65 |

Further, that there are deficiencies in income tax together with additions to the tax due from the Petitioner Elmer H. Thomassen for the taxable year ended December 31, 1966, as follows:

ADDITIONS TO THE TAX
I.R.C. OF 1954

| Year | Income Tax | Section 6651(a) | Section 6653(a) |
|---|---|---|---|
| 1966 | $12,859.00 | $3,214.75 | $642.95 |

[12]The decision in the case at docket No. 5337-73 states in part:

ORDERED, that Respondent's motion is granted and this case is dismissed for lack of prosecution.  It is further

ORDERED and DECIDED:  That there are deficiencies in income tax, together with additions to the tax, due from Petitioners Elmer H. Thomassen and Joan C. Thomassen for the taxable year ended December 31, 1969 as follows:

(continued...)

covering 1970 and 1971 held the Thomassens jointly liable for a deficiency and addition to tax for 1970 and individually liable for deficiencies and additions to tax (in differing amounts for each) for 1971.[13]

---

[12](...continued)

ADDITIONS TO THE TAX - I.R.C. of 1954

| Year | Income Tax | Section 6653(a) |
|------|-----------|-----------------|
| 1969 | $49,484.00 | $2,474.00 |

[13]The decision in the case at docket No. 2949-74 states in part:

ORDERED, that Respondent's motion is granted and this case is dismissed for lack of prosecution. It is further

ORDERED and DECIDED: That there are deficiencies in income tax, together with additions to the tax due from the Petitioners Elmer H. Thomassen and Joan M. Thomassen for the taxable year ended December 31, 1970 as follows:

ADDITIONS TO THE TAX I.R.C. OF 1954

| Year | Income Tax | Section 6653(a) |
|------|-----------|-----------------|
| 1970 | $56.970.00 | $2,849.49 |

Further, that there is a deficiency in income tax, together with additions to the tax, due from the Petitioner Joan M. Thomassen, for the taxable year ended December 31, 1971, as follows:

ADDITIONS TO THE TAX I.R.C. OF 1954

| Year | Income Tax | Section 6651(a) | Section 6653(a) | Section 6654 |
|------|-----------|-----------------|-----------------|--------------|
| 1971 | $19,255.80 | $4,813.95 | $962.79 | $616.19 |

Further, that there is a deficiency in income tax, together with additions to the tax, due from Petitioner Elmer H. Thomassen for the taxable year ended December 31, 1971 as follows:

(continued...)

On October 13, 1975, respondent assessed the deficiencies and additions to tax sustained by the Tax Court for 1964 through 1971.  The Court's decisions were affirmed by the Court of Appeals for the Ninth Circuit on March 12, 1979.  Petitioner and Dr. Thomassen filed separate petitions for certiorari with the U.S. Supreme Court for review of the decision of the Court of Appeals (covering their taxable years 1964 through 1971).  Respondent filed a memorandum in opposition to the petitions for certiorari, and in a footnote respondent's counsel wrote: "Joan Thomassen is a party because she filed joint income tax returns with her husband for all years except 1966."

D.  Collection Proceedings

In 1979 the United States filed suit in U.S. District Court against the Thomassens in order to reduce to judgment the unpaid assessments for the years at issue and to foreclose tax liens on the Newport Beach property and the four other parcels of real estate they owned.  The District Court held the Thomassens jointly and severally liable for a portion of the tax liability

---

[13](...continued)
ADDITIONS TO THE TAX I.R.C. OF 1954

| Year | Income Tax | Section 6651(a) | Section 6653(a) | Section 6654 |
|------|-----------|-----------------|-----------------|--------------|
| 1971 | $19.841.00 | $4,960.00 | $992.05 | $634.91 |

and each individually liable for two remaining portions.[14]  The District Court also set aside as null and void various conveyances during 1972 and 1973 of the Newport Beach property and the Thomassens' four other parcels of real estate, thereby subjecting them to respondent's lien.  The District Court further directed the sale of the Newport Beach property and the four other parcels of real estate.[15]

The United States obtained renewals of the judgment against the Thomassens on July 12, 1989, and August 16, 1999.  The District Court's 1999 renewal order was affirmed by the Court of Appeals for the Ninth Circuit on February 22, 2001.  United States v. Thomassen, 4 Fed. Appx. 481 (9th Cir. 2001).  On April 26, 2006, the District Court issued an order directing petitioner's eviction from, and the public sale of, the Newport Beach property.

III. Request for Section 6015 Relief

A.   Petitioner's Submissions

On May 10, 2006, in response to the public sale and eviction order, petitioner filed Form 8857, Request for Innocent Spouse

---

[14]The District Court also set aside as null and void various conveyances by the Thomassens of the Newport Beach property and their four other parcels of real estate, thereby subjecting the properties to the Government's tax liens and foreclosure.

[15]For reasons not disclosed in the record, the Newport Beach property was not sold at that time.

Relief (relief request), requesting relief from her income tax liabilities for 1964 through 1974.[16]  Attached to the relief request were documents entitled "Supplement to Form 8857" (first supplement) and "Facts and Circumstances Supporting Innocent Spouse Request" (second supplement).

Petitioner represented on the first supplement that her husband controlled the family's finances and that her family lived frugally during the years at issue.  On the second supplement petitioner elected separate liability treatment under section 6015(c).

Petitioner also submitted to respondent a Form 12510, Questionnaire for Requesting Spouse (questionnaire), dated May 26, 2006.  In response to the question "Were you abused by your (ex)spouse during [the] year(s) in question?" petitioner submitted a sworn delaration of Marilyn recounting Dr. Thomassen's bipolar disorder diagnosis and the reaction of her college friends to Dr. Thomassen's behavior (described more fully in our previous findings).

B.  Compliance Division Determination

On September 25, 2006, respondent's Compliance Division issued a notice of final determination denying relief for

---

[16]Although the relief request seeks relief for taxable years 1964 through 1974, there is no mention of 1972, 1973, or 1974 in petitioner's supporting materials, respondent's determination, or the petition.  We accordingly lack jurisdiction over any claim for relief covering the 1972 through 1974 taxable years.

petitioner's taxable years 1964, 1965, 1967, 1968, 1969, and 1970 under section 6015(b), (c), or (f).  With respect to taxable years 1966 and 1971, respondent's Appeals Office issued a determination letter one day later, on September 26, 2006, which treated petitioner's request for relief for 1966 and 1971 as a request for relief under section 66(c) and denied it.  For the foregoing years other than 1966 and 1971, the Compliance Division denied relief under subsections (b) and (c) on the ground that petitioner "had actual knowledge and reason to know about the income that caused the additional tax".  Relief was denied under subsection (f) on the grounds that petitioner failed to establish either (1) that "it would be unfair to hold * * * [petitioner] responsible for the amount due since * * * [petitioner] received benefits from the unreported income", or (2) that petitioner "had reason to believe * * * [petitioner's] spouse would pay the tax when the return was filed."  According to the workpapers of the Compliance Division analyst who reviewed petitioner's request, located in petitioner's administrative file, the analyst found "no marital abuse".

C.  <u>Tax Court Petition</u>

On October 26, 2006, petitioner timely filed a petition for determination of relief from joint and several liability on a

joint return, challenging respondent's denial of relief for 1964 through 1971.[17]

D.    Appeals Office Review

After the petition was filed, petitioner's request for section 6015 relief was transferred from the Compliance Division to respondent's Appeals Office for consideration.  The Appeals Office requested and received additional information from petitioner but likewise concluded that she was not entitled to relief under section 6015(b), (c), or (f).

OPINION

I.    Overview of Section 6015 Relief From Joint and Several Liability

Section 6013(d)(3) provides that taxpayers filing joint Federal income tax returns are jointly and severally liable for the taxes due.  However, section 6015 provides relief from joint and several liability under certain conditions.  Generally speaking, a joint filer may obtain relief where he or she did not have actual or constructive knowledge of the understatement of tax on a return, sec. 6015(b); or, if no longer married to the other joint filer, he or she may limit his or her liability to his or her allocable portion of any deficiency, sec. 6015(c); or

_____

[17]Although petitioner's claims for relief for taxable years 1966 and 1971 were initially dismissed from the case for lack of jurisdiction, petitioner's motion to amend the petition to restore 1966 and 1971 was subsequently granted after additional evidence bearing on petitioner's filing status for those years was brought forth.

if ineligible for relief under subsection (b) or (c), he or she may obtain relief where, in view of all the facts and circumstances, it would be inequitable to hold the joint filer liable, sec. 6015(f).

A taxpayer may seek relief from joint and several liability by raising the matter as an affirmative defense in a petition for redetermination invoking this Court's deficiency jurisdiction under section 6213(a) or, as in this case, by filing a so-called stand-alone petition challenging the Commissioner's final determination denying the taxpayer's claim for such relief. See sec. 6015(e)(1); Fernandez v. Commissioner, 114 T.C. 324, 329 (2000); Butler v. Commissioner, 114 T.C. 276, 287-288 (2000).[18]

Except as otherwise provided in section 6015, the taxpayer seeking relief bears the burden of proof. Rule 142(a); Alt v. Commissioner, 119 T.C. 306, 311 (2002), affd. 101 Fed. Appx. 34 (6th Cir. 2004).

II. Scope and Standard of Review

The parties agree that the proper standard and scope of review in determining whether relief is warranted under section 6015(b) or (c) is de novo. See Porter v. Commissioner, 132 T.C.

---

[18]A taxpayer may also seek such relief in a petition for review of a collection action, see secs. 6320(c), 6330(c)(2)(A)(i), or as an affirmative defense in a matter properly before this Court under sec. 6404 (relating to the Commissioner's determination not to abate interest), Estate of Wenner v. Commissioner, 116 T.C. 284, 288 (2001).

203, 210 (2009); <u>Alt v. Commissioner</u>, <u>supra</u> at 313-315. Although the parties disagree regarding the standard and scope of review that we should apply in determining whether equitable relief is warranted under section 6015(f), this Court has concluded that a de novo standard and scope of review is likewise required when reviewing whether equitable relief should be granted pursuant to section 6015(f). <u>Porter v. Commissioner</u>, <u>supra</u>; <u>Porter v. Commissioner</u>, 130 T.C. 115 (2008). We shall accordingly consider both the administrative record and evidence adduced at trial in determining whether petitioner is entitled to any relief under section 6015 and make an independent, de novo determination in that regard.[19]

III. <u>Whether Petitioner Filed Joint Returns for 1966 and 1971</u>

To be eligible for relief under section 6015(b), (c), or (f), the requesting spouse must have filed a joint Federal income tax return for the year at issue. See sec. 6015(b)(1)(A) (allowing relief if, inter alia, "a joint return has been made for a taxable year"), (c)(1) (limiting joint liability where,

---

[19]On brief, both respondent and petitioner frame their arguments as if the determination under review is that of the Appeals Office. However, the "final" determination denying sec. 6015 relief was issued on Sept. 25, 2006, by respondent's Compliance Division. That determination is the basis of the Court's jurisdiction. See sec. 6015(e)(1)(A)(i)(I). However, given that the standard and scope of review is de novo, any differences in the reasoning or evidence relied on in the positions taken by respondent's Compliance and Appeals personnel need not concern us.

inter alia, "an individual who has made a joint return for any taxable year elects the application of * * * [the] subsection"); see also Christensen v. Commissioner, 523 F.3d 957, 963 (9th Cir. 2008) (equitable relief under section 6015(f) is available only if a joint return is filed), affg. T.C. Memo. 2005-299); Alt v. Commissioner, supra at 312 (same); Raymond v. Commissioner, 119 T.C. 191 (2002) (same).

Petitioner contends that she filed joint returns for 1966 and 1971 with Dr. Thomassen. No return for either year, filed by petitioner or Dr. Thomassen, is in evidence. Petitioner contends that we should find that she filed a joint return for 1966 because it is undisputed that she filed joint returns in the years before and after 1966, creating an inference that the same thing was done in that year. With respect to 1971, petitioner points to the statement made by respondent's counsel, in a footnote to a memorandum filed in opposition to the Thomassens' petitions for certiorari in the deficiency cases covering the years at issue, to the effect that petitioner filed joint returns for all of the years at issue except 1966. Petitioner would have us construe the statement as an admission by respondent that petitioner filed a joint return for 1971. Respondent contends that the preponderance of the evidence demonstrates that petitioner did not file a joint return for 1966 or 1971, pointing to (1) respondent's 1966 account transcript for Dr. Thomassen

listing his filing status as "single"; (2) respondent's 1971 account transcripts for Dr. Thomassen and petitioner listing each of their filing statuses as "single"; (3) notices of deficiency for 1971 that were issued separately and for different amounts to petitioner and Dr. Thomassen; and (4) this Court's June 2, 1975, decisions in the three docketed cases covering the years at issue, which separately stated the amounts due from petitioner and Dr. Thomassen for 1966 and 1971, while stating single amounts due from both of them for all remaining years at issue.

We start with the proposition that this Court's now-final decisions covering petitioner's income tax liabilities for 1966 and 1971 necessarily established her filing status for those years. See Millsap v. Commissioner, 91 T.C. 926, 936 (1988) ("filing status * * * concerns a part of a deficiency that is no less significant than the amount of the income and deductions determined in arriving at an income tax deficiency"). Under the doctrine of res judicata, petitioner is precluded from contending in this proceeding that her filing status is other than that established in this Court's decisions redetermining her income tax deficiencies for 1966 and 1971.

While the decisions covering 1966 and 1971 do not explicitly address petitioner's filing status, the terms of the decisions indicate that the Court determined petitioner's filing status for those years was not joint. The decision in the case covering

years 1964 through 1968 treats 1966 differently from all the other years at issue (and it is undisputed that joint returns were filed in these other years). Whereas the decision treats the deficiencies and additions to tax for the years other than 1966 as a group and characterizes them as "due from the Petitioners, Elmer H. Thomassen and Joan C. Thomassen", the decision uses separate paragraphs for the 1966 deficiencies and additions to tax, characterizing one 1966 deficiency and addition to tax as "due from the Petitioner Joan C. Thomassen" and a separate 1966 deficiency and addition to tax (in amounts different from those stated in relation to Joan C. Thomassen) as "due from the Petitioner Elmer H. Thomassen". The juxtaposition of the treatment of the 1966 liabilities with the treatment of the liabilities for the other years in the same decision leads to the inescapable conclusion that this Court decided that the liabilities other than 1966 were joint and several and the 1966 liabilities were not. It follows that the Court likewise decided that petitioner's filing status for the years at issue other than 1966 was joint, and that her filing status for 1966 was not joint.[20]

---

[20]The transcript of account for Dr. Thomassen's 1966 taxable year, contained in the administrative record and relied on by the Appeals Office, corroborates this reading of the Tax Court's decision. The transcript is for Dr. Thomassen alone, and records his filing status as "single".

The same holds for 1971.  The decision in the case covering 1971, entered simultaneously with the one covering 1966, addresses the Thomassens' 1970 and 1971 taxable years.  Whereas the decision characterizes the 1970 deficiency and additions to tax as "due from the Petitioners Elmer H. Thomassen and Joan M. Thomassen", it then uses separate paragraphs to describe two different sets of deficiencies and additions to tax for 1971, one "due from the Petitioner Joan M. Thomassen" and the other "due from the Petitioner Elmer H. Thomassen".  As with 1966, the conclusion is inescapable that the Court decided petitioner's filing status for 1970 was joint and for 1971 was not joint.[21]

Given the foregoing decisions of this Court, petitioner's contention that she filed a joint return in 1966 because that was her pattern cannot stand.  Similarly, the notion that respondent conceded petitioner's 1971 filing status as joint by virtue of his statement to that effect in a footnote in a memorandum opposing certiorari must also fail.  At most, the statement regarding filing status was an oversight and was in any event

---

[21]Several items of evidence corroborate this reading of the Tax Court's decision.  Notices of deficiency for 1971 issued separately to petitioner and Dr. Thomassen determined different deficiencies and additions to tax for each, whereas a notice of deficiency for 1970, mailed on the same day, was issued to the Thomassens jointly.  The transcripts of account for petitioner's and Dr. Thomassen's 1971 taxable year, contained in the administrative record and relied on by the Appeals Office, are separate documents that record each individual's filing status as "single".

immaterial to the arguments advanced in the memorandum; namely, that the dismissal of the Thomassens' deficiency cases for lack of prosecution was appropriate in view of their repeated failures to offer any evidence or nonfrivolous arguments in the Tax Court proceedings concerning the merits of the deficiency determinations. We therefore conclude that petitioner did not file a joint return in 1966 or 1971 and for that reason hold that she is ineligible for relief under section 6015(b), (c) or (f) for those years.

IV. <u>Section 6015 Relief From Liabilities for 1964, 1965 and 1967-70</u>

We now address petitioner's entitlement to section 6015 relief for the remaining years at issue.

A. <u>Section 6015(b) Relief</u>

Petitioner first seeks relief under section 6015(b). To qualify for relief from joint and several liability under section 6015(b)(1), a taxpayer must establish that:

> (A) a joint return has been made for a taxable year;
>
> (B) on such return there is an understatement of tax attributable to erroneous items of 1 individual filing the joint return;
>
> (C) the other individual filing the joint return establishes that in signing the return he or she did not know, and had no reason to know, that there was such understatement;

(D) taking into account all the facts and circumstances, it is inequitable to hold the other individual liable for the deficiency in tax for such taxable year attributable to such understatement; and

(E) the other individual elects (in such form as the Secretary may prescribe) the benefits of this subsection not later than the date which is 2 years after the date the Secretary has begun collection activities with respect to the individual making the election,

The foregoing requirements of section 6015(b)(1) are stated in the conjunctive. Accordingly, a failure to meet any one of them prevents a requesting spouse from qualifying for section 6015(b) relief. See Alt v. Commissioner, 119 T.C. at 313. Respondent contends that petitioner has failed to satisfy the requirements of subparagraphs (B), (C), (D), and (E).[22]

---

[22]Respondent contends on brief that petitioner's request for relief was untimely under sec. 6015(b)(1)(E) even though respondent expressly conceded its timeliness in his pretrial memorandum, explaining that the Aug. 16, 1999, renewal of the 1979 judgment against petitioner had not satisfied the notification requirement of the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3501(b), 112 Stat. 770. See McGee v. Commissioner, 123 T.C. 314 (2004). Allowing respondent to pursue this issue on brief after having conceded it before trial would be highly prejudicial to petitioner. In any event, respondent had it right the first time. There is no evidence that respondent notified petitioner of her right to sec. 6015 relief in connection with the Aug. 16, 1999, judgment renewal. Consequently, respondent's contention on brief that petitioner's request for relief under sec. 6015(b) was untimely because not brought within 2 years after Aug. 16, 1999, is meritless. See id. Insofar as the record discloses, the next collection action against petitioner was the Apr. 26, 2006, order directing her eviction from and the sale of the Newport Beach property. Her May 10, 2006, relief request was therefore timely under sec. 6015(b)(1)(E).

We consider whether petitioner knew or had reason to know of the understatements within the meaning of subparagraph (C).[23] Under section 6015(b)(1)(C), the requesting spouse must establish that in signing the return, he or she did not know or have any reason to know of the understatement. A requesting spouse has knowledge or reason to know of an understatement if he or she actually knew of the understatement, or if a reasonably prudent taxpayer in his or her position at the time the return was signed could be expected to know that the return contained the understatement. Price v. Commissioner, 887 F.2d 959, 963-965 (9th Cir. 1989); Mora v. Commissioner, 117 T.C. 279, 287 (2001); see also sec. 1.6015-2(c), Income Tax Regs. Factors to consider in analyzing whether the requesting spouse had "reason to know" of the understatement include: (1) The spouse's level of education; (2) the spouse's involvement in the family's business and financial affairs; (3) the presence of expenditures that appear lavish or unusual when compared to the family's past levels of income, standard of living, and spending patterns; and (4) the nonrequesting spouse's evasiveness and deceit concerning the couple's finances. Price v. Commissioner, supra at 965; Mora

---

[23]This "knowledge" requirement in sec. 6015(b)(1)(C) is virtually identical to the requirement of former sec. 6013(e)(1)(C); therefore, cases interpreting former sec. 6013(e) remain instructive to our analysis. Jonson v. Commissioner, 118 T.C. 106, 115 (2002), affd. 353 F.3d 1181 (10th Cir. 2003); Butler v. Commissioner, 114 T.C. 276, 283 (2000); see also Doyel v. Commissioner, T.C. Memo. 2004-35.

v. Commissioner, supra at 287. Moreover, a taxpayer has reason to know of an understatement if she has a duty to inquire and fails to satisfy that duty. Price v. Commissioner, supra at 965. A requesting spouse has a duty to inquire when she "[knows] enough facts to put her on notice that such an understatement exists." Id. We may impute the requisite knowledge to the requesting spouse unless she satisfies her duty of inquiry. Porter v. Commissioner, 132 T.C. at 211-212.

As we construe her argument, petitioner contends that she did not know or have reason to know of the understatements on the joint returns at issue because she did not review them before signing and the Thomassens' expenditures and standard of living during the years at issue were not lavish or unusual when compared to their past expenditures and standard of living. We disagree.

While not involved with Dr. Thomassen's practice, petitioner knew that during the years at issue it was successful and that their mortgage payments and family's household expenses were paid primarily with income from the practice.[24] During the years at issue the Thomassens maintained the Newport Beach property, supported eight children, paid for their children to attend private Catholic schools, purchased a new motorhome,

---

[24]As noted, petitioner paid some personal and family expenditures with income from her cello performances.

vacationed regularly, and made trips overseas.  In addition, sometime during their marriage and before 1972 Dr. Thomassen acquired four parcels of real estate for investment, using earnings from his medical practice.  Notwithstanding this substantial level of personal expenditures, petitioner signed returns year after year reporting no tax liability.  Although petitioner was not versed in tax or financial matters, she was college educated.  We believe a person in her circumstances could reasonably be expected to know that the returns contained an understatement or that further inquiry was warranted.  See Price v. Commissioner, supra at 965; Butler v. Commissioner, 114 T.C. at 283.  Accordingly, we find that petitioner had reason to know of the understatements on the returns.  Therefore, the requirement in section 6015(b)(1)(C) is not satisfied, precluding relief under subsection (b)(1) from her income tax liabilities for the remaining years at issue (1964, 1965, 1967, 1968, 1969, and 1970).[25]

B.   Section 6015(c) Relief

Petitioner also seeks relief pursuant to section 6015(c) which, generally speaking, relieves electing joint filers of liability for those portions of a deficiency not allocable to

---

[25]Because petitioner does not satisfy subpar. (C), we need not consider whether she satisfies the requirements of subpars. (B) and (D) of sec. 6015(b)(1).  See Alt v. Commissioner, 119 T.C. 306, 313 (2002), affd. 101 Fed. Appx. 34 (6th Cir. 2004).

them.  Subject to certain limitations not pertinent here, an individual may elect relief under section 6015(c) if (1) at the time of the election he or she is no longer married to, or is legally separated from, the individual with whom he or she filed the joint return to which the election relates, or has not been a member of the same household as that person for the 12-month period preceding the election, and (2) the election is made not later than 2 years after the date on which collection activity began against the individual.  Sec. 6015(c)(3)(A) and (B).  If a spouse elects relief under section 6015(c), the spouse's "liability for any deficiency which is assessed with respect to the return shall not exceed the portion of such deficiency properly allocable to the individual under subsection (d)."  Sec. 6015(c)(1).  An electing spouse bears the burden of proving how much of any deficiency is allocable to him or her.  Sec. 6015(c)(2); see Charlton v. Commissioner, 114 T.C. 333, 341 (2000).

Petitioner satisfies the threshold eligibility requirements for electing section 6015(c) relief.  Her request was timely[26] and she was widowed from Dr. Thomassen when she made the election in her relief request.  See H. Conf. Rept. 105-599, at 252 n.16 (1998), 1998-3 C.B. 747, 1006.

---

[26]See supra note 22.

However, petitioner has not met her burden of establishing which portions of the deficiencies for the years at issue are allocable to her. Petitioner admitted at trial that during the years at issue she received income from playing the cello. However, there is no evidence of the amount of cello income petitioner earned each year[27] nor of the amount, if any, that the Thomassens reported on their joint returns. Moreover, there is evidence of other income for the years in issue that is not obviously allocable to Dr. Thomassen's medical practice. The 1969 notice of deficiency in evidence determined that the Thomassens reported income in addition to the gross receipts from Dr. Thomassen's practice (e.g., dividends, interest, and rental and farming income). Petitioner has not demonstrated that none of those items is allocable in some portion to her. Moreover, the financial particulars for 1969 create a reasonable inference that the Thomassens had similar income items for the years in issue that preceded and followed 1969.

In sum, petitioner has not established the portions of the deficiencies for the years in issue that are allocable to her. While it is true that the absence of the returns and the paucity of other evidence related to these long-ago periods impose a

---

[27]The only estimate petitioner provided at trial was that she earned approximately $18,000 from playing the cello in 1974, a year not in issue. However, that estimate suggests that her earnings were not de minimis for the years at issue.

daunting burden on petitioner to comply with section 6015(c)(2), the statute is clear that the burden falls squarely on petitioner to establish the allocation.  She has not done so, and as a result her claim for relief under section 6015(c) must fail. Accordingly, petitioner is not entitled to relief under section 6015(c) from the income tax liabilities for the remaining years at issue (1964, 1965, 1967, 1968, 1969, and 1970).

     C.   Section 6015(f) Relief

     1.   In General

Petitioner also seeks relief under section 6015(f).  Under that section the Commissioner may relieve a taxpayer of joint and several liability if (1) relief is not available to the individual under section 6015(b) or (c), and (2) taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or deficiency (or any portion of either).  Sec. 6015(f).  Pursuant to his authority, under section 6015(f), to prescribe "procedures" for granting equitable relief pursuant to that provision, the Commissioner has prescribed guidelines in Rev. Proc. 2003-61, 2003-2 C.B. 296, for determining whether relief should be granted under section 6015(f), effective for requests for relief filed on or after November 1, 2003.  We consider those guidelines as well as any other facts and circumstances to determine the appropriate equitable relief.  See sec. 6015(e)(1)(A), (f).

### 2. Factors Bearing on Equitable Relief

#### a. Threshold Conditions

Rev. Proc. 2003-61, sec. 4.01, 2003-2 C.B. at 297-298, lists seven threshold conditions which generally must be satisfied for the Commissioner to grant relief if he determines in the light of all the facts and circumstances that it would be inequitable to hold the requesting spouse liable for the income tax liability. Those conditions are: (1) The requesting spouse filed a joint return for the taxable year for which relief is sought; (2) relief is not available to the requesting spouse under section 6015(b) or (c); (3) the requesting spouse applies for relief no later than 2 years after the date of the Commissioner's first collection activity after July 22, 1998, with respect to the taxpayer; (4) no assets were transferred between the spouses as part of a fraudulent scheme by the spouses; (5) the nonrequesting spouse (i.e., the individual with whom the requesting spouse filed the joint return) did not transfer "disqualified assets" (within the meaning of section 6015(c)(4)(B)) to the requesting spouse; (6) the requesting spouse did not file or fail to file the return with fraudulent intent; and (7) absent enumerated exceptions, the liability from which the requesting spouse seeks relief is attributable to an item of the nonrequesting spouse.

The parties do not dispute that conditions (1), (4), (5), and (6) have been satisfied with respect to petitioner's taxable years 1964, 1965, 1967, 1968, 1969, and 1970. We have held herein that relief is unavailable to petitioner under section 6015(b) or (c) for those years, satisfying condition (2). We reject respondent's contention that petitioner's request for relief under section 6015(f) was untimely.[28]

That leaves condition (7)--that the liability from which relief is sought be attributable to items of the nonrequesting spouse. Respondent argues that condition (7) is not satisfied. We have held herein that petitioner is ineligible for relief under section 6015(c) because she could not establish which portions of the deficiencies for the years at issue were allocable to her. We reached this conclusion in view of the fact that petitioner earned income during the years at issue as a professional cellist and that the Thomassens reported investment, rental, and farming income in 1969 that had not been shown to be solely allocable to Dr. Thomassen. For these same reasons, petitioner might not satisfy condition (7) with respect to all liabilities at issue.

However, one of the exceptions to condition (7) enumerated in Rev. Proc. 2003-61, supra, is that where the requesting spouse establishes that he or she was a victim of abuse, equitable

---

[28]See supra note 22.

relief may be granted notwithstanding that the deficiency may be attributable in part or in full to an item of the requesting spouse. Rev. Proc. 2003-61, sec. 4.01(7)(d), states:

> Abuse not amounting to duress. If the requesting spouse establishes that he or she was the victim of abuse prior to the time the return was signed, and that, as a result of the prior abuse, the requesting spouse did not challenge the treatment of any items on the return for fear of the nonrequesting spouse's retaliation, the Service will consider granting equitable relief although the deficiency or underpayment may be attributable in part or in full to an item of the requesting spouse.

The caselaw construing what constitutes abuse not amounting to duress[29] requires a case-by-case analysis of whether there was enough abuse to make it reasonable to conclude that the requesting spouse was impeded from acquitting his or her obligations under the Internal Revenue Code. See Nihiser v. Commissioner, T.C. Memo. 2008-135 (and cases cited therein). Abuse for this purpose may be physical or solely psychological. Id. There must be substantiation, or at least specificity, regarding the claimed abuse; generalized claims of physical or emotional abuse are insufficient. See id.

As our findings reflect, petitioner adduced specific evidence concerning Dr. Thomassen's propensity to inflict psychological abuse. There was credible testimony that his

---

[29]If duress were shown, sec. 6015 relief would be unavailable, as a return signed under duress is not a joint return. See Brown v. Commissioner, 51 T.C. 116, 120-121 (1968).

tirades drove one of his children with a fragile psyche to attempt suicide. Another daughter's college friends were so appalled after witnessing a weekend's worth of Dr. Thomassen's behavior that they urged petitioner to find shelter for herself and the younger children elsewhere. Petitioner consulted her priest regarding her husband's behavior, though he counseled perseverance--perhaps mindful of Dr. Thomassen's role as a devout parishioner who attended daily Mass. The evidence also demonstrates that Dr. Thomassen's anxiety and rage were quite susceptible of being triggered by matters relating to disputes with the IRS. He conducted years-long litigation with the IRS in which he pursued tax-protester positions to the effect that the Government lacked authority to investigate his finances or to impose an income tax. We are fully persuaded that petitioner endured circumstances which made her reluctant to challenge the treatment of any items on the joint returns in issue for fear of Dr. Thomassen's psychological abuse. Consequently, the fact that some of the deficiencies at issue may be attributable to items of petitioner does not cause her to fail to satisfy condition (7). See Rev. Proc. 2003-61, sec. 4.01(7)(d). She therefore satisfies all seven threshold conditions in Rev. Proc. 2003-61, sec. 4.01, for relief under section 6015(f).

b.    Listed Factors

For requesting spouses who have satisfied the threshold requirements, Rev. Proc. 2003-61, sec. 4.03(2), 2003-2 C.B. at 298-299, then lists eight nonexclusive factors to consider in determining whether it would be inequitable to hold the requesting spouse liable for all or part of a deficiency.

These nonexclusive factors include whether:  (1) The requesting spouse is separated or divorced from the nonrequesting spouse; (2) the requesting spouse will suffer economic hardship without relief; (3) the requesting spouse did not know or have reason to know of the item giving rise to the deficiency; (4) the nonrequesting spouse had a legal obligation to pay the outstanding liability pursuant to a divorce decree or agreement; (5) the requesting spouse received a significant benefit (beyond normal support) from the unpaid income tax liability or item giving rise to the deficiency; (6) the requesting spouse has made a good faith effort to comply with income tax laws in subsequent years; (7) the requesting spouse was abused by the nonrequesting spouse; and (8) the requesting spouse was in poor mental or physical health when signing the return or requesting relief. The first five of the foregoing factors are relevant to the determination of whether withholding relief is inequitable; the last two factors weigh in favor of relief if present, but do not weigh against relief if not present.  Id.  The revenue procedure

further provides that no single factor will be determinative; all relevant factors will be considered and weighed appropriately, including those not listed. Id.

### i.    Marital Status

Petitioner was widowed when she sought relief.  For purposes of section 6015(f), petitioner's status of being a widow is "tantamount to her being separated or divorced."  Rosenthal v. Commissioner, T.C. Memo. 2004-89.  This factor favors relief.

### ii.    Economic Hardship

Because petitioner is now deceased, there can be no economic hardship to her personally if equitable relief is denied.  Jonson v. Commissioner, 118 T.C. 106, 126 (2002), affd. 353 F.3d 1181 (10th Cir. 2003).  Accordingly, this factor weighs against relief.

### iii.    Knowledge or Reason To Know

We concluded herein for purposes of section 6015(b) relief that petitioner had reason to know of the items giving rise to the deficiencies in the joint return years at issue--a factor that, standing alone, weighs against equitable relief under Rev. Proc. 2003-61, supra.  However, Rev. Proc. 2003-61, sec. 4.03(2)(b)(i), provides that "A history of abuse by the nonrequesting spouse may mitigate a requesting spouse's knowledge or reason to know."  As discussed, we are persuaded that petitioner endured years of psychological abuse from Dr.

Thomassen, at the time the returns at issue were filed and thereafter. There is reason to believe the abuse may have been exacerbated in the case of dealings with the IRS. In these circumstances, petitioner was effectively precluded from meeting ordinary duties of investigation and challenge concerning the return positions taken during the years at issue. In line with the revenue procedure, we conclude that petitioner's reason to know is neutralized as a factor weighing against equitable relief.

### iv.   Nonrequesting Spouse's Legal Obligation

The Thomassens remained married until Dr. Thomassen's death. As this factor concerns obligations arising pursuant to a divorce decree or agreement, it is inapplicable here. See Magee v. Commissioner, T.C. Memo. 2005-263; Ogonoski v. Commissioner, T.C. Memo. 2004-52.

### v.   Significant Benefit

Rev. Proc. 2003-61, sec. 4.03(2)(a)(v), cites section 1.6015-2(d), Income Tax Regs., as a guide for interpreting significant benefit as a factor in determining whether it is inequitable to hold a requesting spouse liable for a deficiency. Section 1.6015-2(d), Income Tax Regs., provides that "A significant benefit is any benefit in excess of normal support." See also Terzian v. Commissioner, 72 T.C. 1164, 1172 (1979). Moreover, because the language of section 6015(f)(1) containing

the equity test is virtually identical to the language of former section 6013(e)(1)(D), caselaw construing former section 6013(e)(1)(D) remains helpful in construing section 6015(f)(1). See Mitchell v. Commissioner, 292 F.3d 800, 806 (D.C. Cir. 2002), affg. T.C. Memo. 2000-332; Cheshire v. Commissioner, 282 F.3d 326, 338 n.29 (5th Cir. 2002), affg. 115 T.C. 183 (2000); Jonson v. Commissioner, supra at 119; Levy v. Commissioner, T.C. Memo. 2005-92.

Normal support is to be measured by the circumstances of the taxpayers. See Sanders v. United States, 509 F.2d 162, 168 (5th Cir. 1975); Estate of Krock v. Commissioner, 93 T.C. 672, 678-679 (1989); Flynn v. Commissioner, 93 T.C. 355, 367 (1989); Foley v. Commissioner, T.C. Memo. 1995-16.

Respondent contends that petitioner received a significant benefit from the unpaid tax for the joint return years at issue, citing the payment of private Catholic school tuition for as many as eight of petitioner's children during those years, the acquisition of a residence and four other parcels of real estate, and the acquisition of a new motorhome.

While the failure to pay any Federal income tax for the 6 joint return years at issue undoubtedly increased Dr. Thomassen's

disposable income,[30] the question remains whether petitioner significantly benefited as a result.  For the reasons discussed below, we conclude that she did not.

First, Dr. Thomassen controlled the family's finances and allowed petitioner very little access to his earnings.  See Flynn v. Commissioner, supra at 367.  Dr. Thomassen paid many household expenses directly from his office, presumably those which generated a monthly or other periodic bill, such as utilities, mortgage, and private Catholic school tuition.  He gave petitioner an allowance for other household expenses, but he was so parsimonious that petitioner, after using her cello earnings for that purpose, had to borrow from her mother or sell personal items to meet such expenses.  The Thomassens' house was furnished frugally.  There is no evidence that petitioner received anything lavish for her personal consumption as a result of the unpaid tax for the joint return years at issue.  We conclude that Dr. Thomassen's payment of household expenses did not extend beyond normal support and therefore was not a significant benefit to

---

[30]The deficiencies for those years, which ranged from $20,000 to $57,000, may exaggerate the Thomassens' taxable income for those years, in that the central dispute in each year concerned Dr. Thomassen's refusal, on constitutional and religious grounds, to provide any financial information to substantiate his Schedule C deductions.  Thus the deficiencies may reflect the taxation of gross receipts to some extent (although the record suggests that at least for 1969 respondent allowed certain Schedule C expenses).

petitioner within the meaning of section 1.6015-2(d), Income Tax Regs.

Second, some of Dr. Thomassen's additional disposable income arising from the unpaid tax may well have enabled him to purchase the four parcels of real estate he acquired for investment purposes. Although these properties were titled in Dr. Thomassen's and petitioner's names, the properties were sold in 1979 to satisfy the Thomassens' tax liabilities for the years at issue. Consequently, the properties did not provide a significant benefit to petitioner.

Third, respondent emphasizes that petitioner significantly benefited by virtue of the payment of private Catholic school tuition for as many as eight children during and after the joint return years at issue, citing Jonson v. Commissioner, 118 T.C. at 119-120, where this Court found that payment of a couple's children's college expenses significantly benefited the requesting spouse. However, Jonson, involving college expenses, is distinguishable from the instant case, which involves private elementary and secondary school tuition. While this Court has generally held that the payment of children's college or graduate school expenses constitutes a significant benefit to a requesting spouse, see Jonson v. Commissioner, supra at 126 (college expenses for three children); Levy v. Commissioner, supra (same); Weiss v. Commissioner, T.C. Memo. 1995-70 (college and graduate

school expenses for three children), the payment of private elementary or secondary school expenses of the requesting spouse's children generally has not been held to constitute a significant benefit, see Marzullo v. Commissioner, T.C. Memo. 1997-261 (private school tuition for four children); Friedman v. Commissioner, T.C. Memo. 1995-576 (private secondary school and college expenses of two children); Foley v. Commissioner, supra (private school expenses for two children).

Given Dr. Thomassen's controlling behavior, his penurious approach to household expenditures, and his devout Catholicism (a religion to which petitioner converted in connection with her marriage), one can easily infer that the decision to expend funds for the Thomassen children to attend Catholic rather than public schools reflected Dr. Thomassen's priorities rather than petitioner's. In the particular circumstances of this case, we conclude that petitioner did not significantly benefit by virtue of the expenditures for private Catholic school tuition for the Thomassen children.

That leaves the residence, the purchase of a new motorhome and perhaps the domestic and foreign travel (although respondent has not cited the travel as a significant benefit). We are not persuaded that these expenditures exceeded normal support as measured by the circumstances of the Thomassens. See Flynn v. Commissioner, supra at 366-367 (vacations, installation of

backyard swimming pool, and gift of mink coat to nonrequesting spouse did not exceed normal support as measured by taxpayers' circumstances). As petitioner did not significantly benefit from the unpaid tax at issue, this factor favors relief.

### vi. Income Tax Compliance

There is no evidence concerning whether petitioner complied or made an effort to comply with income tax laws in the taxable years following the years for which relief is sought. We assume that respondent would have had ready access to evidence of any significant noncompliance by petitioner in these years, and he has produced none. In this circumstances, this factor is at most neutral and does not weigh against equitable relief.

### vii. Abuse

As previously discussed, we are persuaded by the evidence that petitioner was subject to substantial psychological abuse from Dr. Thomassen during the period in which the returns at issue were filed and thereafter. Because Dr. Thomassen's behavior worsened as his disputes with the IRS mushroomed, and his abusive behaviour could be triggered by matters related to his dealings with the IRS, we believe that petitioner acquiesced in filing the joint returns as proposed by Dr. Thomassen to keep the peace and avoid his rage. Thus we conclude that petitioner's actions with respect to filing the returns at issue, including challenging any of the positions taken thereon, were

significantly affected by her fear of retaliatory psychological abuse. Consequently, spousal abuse weighs very heavily as a factor favoring equitable relief.[31]

### viii. Mental or Physical Health

There is no evidence that petitioner suffered significant mental or physical health problems at the time she signed the joint returns at issue (other than the psychological abuse discussed). Petitioner testified that she had cancer at the time she requested relief, and she died after the trial. The absence of a health problem at the time the returns were signed does not weigh against relief. See Rev. Proc. 2003-61, sec. 4.03(b). Because a requesting spouse's health at the time of the request for relief implicates considerations similar to those that arise in the case of the economic hardship factor, we conclude that petitioner's death makes her health at the time she requested relief irrelevant. Cf. Jonson v. Commissioner, supra at 126 (no economic hardship where requesting spouse is deceased). This factor is therefore neutral.

---

[31]Respondent contends that an additional factor, beyond those enumerated in Rev. Proc. 2003-61, 2003-2 C.B. 296, also weighs against relief; namely, petitioner has "unclean hands" because she participated in the scheme to fraudulently convey the Thomassens' real property so that it would not be available to satisfy their income tax obligations. We conclude instead that to the extent petitioner may have executed documents to effect the fraudulent conveyances, she did so as a result of the same psychological abuse that resulted in her joining in the joint returns at issue.

### 3. Conclusion

Petitioners satisfies all the threshold eligibility requirements for equitable relief listed in Rev. Proc. 2003-61, supra. Among the revenue procedure's listed factors, petitioner's marital status, absence of significant benefit, and history of abuse favor equitable relief. In the circumstances of this case, abuse by the nonrequesting spouse weighs very heavily in favor of relief, since we are persuaded that the abuse rendered petitioner essentially incapable of challenging her spouse regarding the positions taken on the joint returns. Weighing against relief is the absence of economic hardship. All remaining listed factors are neutral or inapplicable. On balance, pursuant to section 6015(f), taking into account all the facts and circumstances, we conclude that it would be inequitable to hold petitioner liable for the deficiencies for taxable years 1964, 1965, 1967, 1968, 1969, and 1970. We therefore hold that petitioner is entitled to relief under section 6015(f) with respect to the deficiencies for those years.

We have considered all of the contentions and arguments of the parties that are not discussed herein, and we conclude that they are without merit, irrelevant, or moot.

To reflect the foregoing,

An appropriate decision will be entered.