T.C. Memo. 2019-12

UNITED STATES TAX COURT

LAURA DENISE CONTRERAS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7713-16.                                    Filed February 26, 2019.

<u>Bruce A. McGovern</u>, <u>Jeffery A. Gold</u>, and Heidi A. Weelborg (student), for petitioner.

<u>Susan M. Fenner</u> and <u>Christina D. Sullivan</u>, for respondent.

**[*2]**         MEMORANDUM FINDINGS OF FACT AND OPINION

PARIS, <u>Judge</u>:  Pursuant to section 6015(e)(1)[1] petitioner seeks review of respondent's determination that she is not entitled to relief from joint and several liability under section 6015(f) for 2006, 2007, 2008, and 2009 with respect to unpaid tax reported on the joint Federal income tax returns she filed with her former spouse, Efigenio Contreras.

FINDINGS OF FACT

Some facts have been stipulated and are so found.  The stipulated facts and the exhibits are incorporated herein by this reference.  Petitioner resided in Texas when she timely filed her petition.

I.      Background

Petitioner and Mr. Contreras were married on August 12, 2000, under a license issued in Harris County, Texas, and during their marriage had two children.  Petitioner stayed at home and cared for their children.  Mr. Contreras owned and operated a sole proprietorship, EC Construction, which was the only

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[*3] source of income during the marriage. In 2010 petitioner filed for divorce, and on October 5, 2011, the divorce became final.

## II.    Liberty County Properties:  Lots 12 and 13

On May 6, 2003, Mr. Contreras and petitioner acquired by warranty deed a property in Liberty County, Texas (Lot 12).  Before their marriage Mr. Contreras acquired an ownership interest in the lot next to Lot 12 (Lot 13).  On May 10, 2004, petitioner and Mr. Contreras applied for a loan to build a home on Lot 13. The loan was denied because Mr. Contreras did not have clear title to Lot 13. During the application process petitioner learned Mr. Contreras was still married to another woman by common law, and his common law wife's name was also on the deed to Lot 13.  Mr. Contreras had failed to divorce his common law wife before obtaining a marriage license in Texas to marry petitioner.  On February 4, 2005, almost five years after marrying petitioner, Mr. Contreras obtained a divorce decree from his common law wife, which was entered by the 75th Judicial District Court of Liberty County, Texas.  The decree granted Lot 13 to Mr. Contreras.  On January 27, 2005, Mr. Contreras transferred a one-half interest in Lot 13 to petitioner.  Petitioner and Mr. Contreras did not have another wedding, nor did they obtain a new marriage license.  Petitioner and Mr. Contreras continued to live together after he obtained a judicial divorce of his common law marriage.  Over

**[*4]** the next several years, without a building loan, Mr. Contreras used surplus construction materials from his construction business to build their home on Lot 13.

III.    Spousal Abuse

During the marriage Mr. Contreras abused petitioner.  The police were called to the home many times over several years leading up to the divorce and after.  Their daughter witnessed Mr. Contreras' aggressive abusive behavior towards petitioner.  He threw items at petitioner, kicked in a bedroom door, damaged property, threw petitioner's possessions outside the home, and broke mirrors along with other aggressive physical acts.  Mr. Contreras was also verbally abusive.  On several occasions the abuse was so severe petitioner took their children and left the home to stay with her grandmother.  Mr. Contreras was frequently out of town working on construction sites, and when home he was often intoxicated.  On one occasion Mr. Contreras was arrested for intoxication after the police were called to the home.  Petitioner stated she was afraid he would "come home and beat her".  On October 14, 2010, petitioner obtained a temporary restraining order against Mr. Contreras for two weeks.  Petitioner learned that Mr. Contreras was having an affair with yet another woman.

**[*5]** IV.     Divorce

In 2010 petitioner filed for divorce from Mr. Contreras.  Petitioner received custody of the couple's two minor children.  The final divorce decree entered by the 75th Judicial District Court of Liberty County, Texas, included a protective provision for the "preservation and protection" of petitioner and her minor children while they lived in the home.  After the divorce, even with protective provisions in place, petitioner had to call the police regarding Mr. Contreras' continuing abusive behavior.

At the time petitioner's divorce became final in October 2011, the decree distributed to petitioner as her separate property a one-half interest in Lot 12 and a one-half interest in Lot 13.  The divorce court awarded petitioner an additional $127,050.  If Mr. Contreras failed to pay the awarded amount on or before September 2012, the decree allowed for judicial foreclosure on his one-half interests in Lots 12 and 13 to satisfy the judgment.  On November 28, 2012, after failing to make the payment, Mr. Contreras by warranty deed transferred his one-half interests in Lots 12 and 13 to petitioner, with the assistance of counsel and in satisfaction of the divorce decree judgment.  The conveyance was subject to the Internal Revenue Service's (IRS) lien outstanding against Mr. Contreras.  The warranty deed, recorded in the public records of Lincoln County, granted Mr.

[*6] Contreras' one-half interests subject to liens of record on Lots 12 and 13 to petitioner. The Lincoln County Appraisal District valued Lot 12 at $35,600, which included a mobile home valued at $18,910. Lot 13, on which petitioner and their children resided, was valued at $328,430.

## V. Federal Tax Liens

On June 6, 2011, before the divorce was final and before the property was transferred, a notice of lien was filed and recorded against Mr. Contreras' property and assets in Lincoln County on the basis of liabilities from a substitute return the IRS had prepared using Mr. Contreras' 2008 income. On October 2, 2012, the U.S. Department of Justice filed a complaint in the U.S. District Court for the Eastern District of Texas (District Court) against Mr. Contreras seeking to obtain a judgment and judicial foreclosure sale of Lots 12 and 13. The complaint also sought to foreclose on petitioner's homestead interest in Lot 13. In January 2013 the IRS began an audit for Mr. Contreras' 2008 and 2009 tax years. On January 4, 2013, Mr. Contreras filed his 2008 and 2009 tax returns claiming head of household status. On March 5, 2013, petitioner and Mr. Contreras filed amended joint returns for 2008 and 2009. On July 29, 2013, petitioner and Mr. Contreras filed joint returns for 2006 and 2007. On December 2, 2013, after the joint returns were filed, the complaint in District Court was amended to include petitioner and

[*7] Mr. Contreras' joint tax liabilities for 2006 through 2009 and Mr. Contreras' individual tax liabilities for 2010 through 2012.

VI.     IRS Audit

At some point during the IRS audit petitioner was represented by the same counsel as her ex-husband even though they had been divorced for almost 17 months and a protective provision was in place.  Neither the power of attorney nor a conflict waiver is in the record.  During interactions with the IRS, petitioner tried to ask the IRS agent questions because she did not understand why she had to file joint tax returns with her ex-husband, nor did she understand the amounts reported on the returns or why she had to sign a 2008 return for a year already in collection in District Court.  The IRS agent declined to respond and redirected her to counsel paid for by Mr. Contreras.  Petitioner was instructed to sign the returns "as to form" but felt pressured into signing them.  She made handwritten notes on the 2006 and 2007 tax returns next to her signature stating "as to form".  At the time of signing the joint returns petitioner's minor children still lived at home and the protective provision remained in place.

VII.    Expenses and Financial Responsibility

Petitioner knew Mr. Contreras had financial difficulties.  However, Mr. Contreras was the sole financial provider during the marriage and had been

[*8] responsible for tax filings and payments during the marriage. He had paid all previous tax liabilities since 2000 and was current through 2005. Petitioner believed her ex-husband would pay the liabilities as he had previously paid all tax liabilities. At the time of signing the return petitioner had been divorced from Mr. Contreras for almost 17 months and did not have knowledge of his current income or employment. Before the divorce petitioner had signatory authority on Mr. Contreras' business account to transfer money into a joint checking account to pay household bills, but she did so only with his permission. During the marriage petitioner did not have nor could she obtain access to Mr. Contreras' construction records because she was not named as a principal in the construction business. Mr. Contreras conducted his business without petitioner's assistance or involvement.

The divorce decree terminating petitioner and Mr. Contreras' marriage allocated financial responsibility. The divorce decree was issued after the IRS notice of lien was filed of record with respect to Mr. Contreras' 2008 income tax liability. The divorce decree distributed undivided one-half interests in Lots 12 and 13 to petitioner and Mr. Contreras and referenced the IRS notice of lien that had been filed against Mr. Contreras for his 2008 tax liability. The decree specifically excluded the IRS lien from petitioner's list of liabilities. In addition,

[*9] Mr. Contreras was ordered to pay all liabilities related to his construction business and all other community debts. Petitioner was ordered to pay all notes (excluding IRS liens) secured by the property awarded to her and all charge accounts and credit cards in her name. Petitioner did not receive any portion of Mr. Contreras' business assets or his residence in Mexico.

Petitioner has some education that allowed her to work part time in a medical office after the divorce from 2013 to 2015 for $8 per hour, but she has not worked since that time. Petitioner has relied on child support payments to meet her basic living needs. The child support records indicate her average monthly child support has been approximately $2,271.66. Mr. Contreras has been making child support payments sporadically and is still in arrears.

## VIII. Request for Relief

On December 27, 2013, petitioner submitted a Form 8857, Request for Innocent Spouse Relief, requesting relief for 2006 through 2009. Petitioner declared on her Form 8857 that she signed the returns under duress and was a victim of spousal abuse. Petitioner declared on her Form 8857 that her monthly expenses were approximately $4,600. Her monthly income was approximately $1,100, which included Government assistance. In addition petitioner receives average monthly child support payments of $2,271.66. Petitioner's income and

**[\*10]** expenses are substantially the same as when she submitted the Form 8857.

As of October 30, 2017, petitioner's tax liabilities, including accrued penalties and

interest, from the joint Federal income tax returns for 2006, 2007, 2008, and 2009

were approximately:

| Year | Liability |
|------|-----------|
| 2006 | $81,686.72 |
| 2007 | 86,266.63 |
| 2008 | 52,651.40 |
| 2009 | 77, 586.72 |
| Total | 298,191.47 |

On January 12, 2016, the IRS issued a final appeals determination denying

petitioner's request for innocent spouse relief for 2006, 2007, 2008, and 2009. On

April 4, 2016, petitioner timely filed a petition with this Court seeking review of

respondent's notice of determination. A certified copy of the notice of filing of

petition and right to intervene were served on Mr. Contreras on May 4, 2016. Mr.

Contreras did not file a notice of intervention with the Court. Petitioner has timely

filed Federal income tax returns for the tax years since her divorce.

**[\*11]**                              OPINION

Generally, married taxpayers may elect to file joint Federal income tax returns.  Sec. 6013.  Section 6013(d)(3) provides that if a joint return is filed each spouse is jointly and severally liable for the entire tax due for that year.  A requesting spouse may be relieved from joint and several liability under section 6015, however, if certain conditions are met.  Except as otherwise provided in section 6015, the requesting spouse generally bears the burden of proof.  Rule 142(a); Alt v. Commissioner, 119 T.C. 306, 311 (2002), aff'd, 101 F. App'x 34 (6th Cir. 2004).

Section 6015(f) grants the Commissioner discretion to relieve an individual from joint liability, where relief is not available under section 6015(b) or (c), if, taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or deficiency.  Subsections (b) and (c) of section 6015 apply only in the case of "an understatement of tax" or "any deficiency" in tax and do not apply in the case of underpayments of tax reported on joint returns.  Sec. 6015(b)(1)(B), (c)(1).  When the liability arises from an underpayment of tax reported as due on a joint return, relief is available only under section 6015(f).  See sec. 6015(b)(1)(B), (c)(1), (f)(1); Hopkins v. Commissioner, 121 T.C. 73, 88 (2003); see also Block v. Commissioner, 120 T.C.

**[\*12]** 62, 66 (2003). Petitioner has requested relief from joint and several liability under section 6015(f).

As directed by section 6015(f), the Commissioner has prescribed procedures to determine whether a requesting spouse is entitled to equitable relief from joint and several liability. Those procedures are set forth in Rev. Proc. 2013-34, sec. 4, 2013-43 I.R.B. 397, 399-403. Although the Court considers those procedures when reviewing the Commissioner's determination, the Court is not bound by them. Pullins v. Commissioner, 136 T.C. 432, 438-439 (2011); Rogers v. Commissioner, T.C. Memo. 2018-53, at \*112. The Court's determination ultimately rests on an evaluation of all the facts and circumstances. Porter v. Commissioner, 132 T.C. 203, 210 (2009). When the Court reviews a determination by the Commissioner denying relief under section 6015(f), both the standard and scope of review are de novo. Porter v. Commissioner, 132 T.C. at 210.

Pursuant to Rev. Proc. 2013-34, sec. 4, the Commissioner conducts a multistep analysis when determining whether a requesting spouse is entitled to equitable relief under section 6015(f). See Rev. Proc. 2013-34, sec. 4.01, 4.02, and 4.03. The requirements for relief under Rev. Proc. 2013-34, supra, are categorized as threshold or mandatory requirements, streamlined elements, and

**[*13]** equitable factors. A requesting spouse must satisfy each threshold requirement to be considered for relief. See id. sec. 4.01, 2013-43 I.R.B. at 399-400. If the requesting spouse meets the threshold requirements, the Commissioner will grant equitable relief if the requesting spouse meets each streamlined element. See id. sec. 4.02, 2013-43 I.R.B. at 400. Otherwise, the Commissioner will determine whether equitable relief is appropriate by evaluating the equitable factors. See id. sec. 4.03, 2013-43 I.R.B. at 400-403.

I.      Threshold Requirements

The requesting spouse must meet seven threshold requirements to be considered for relief under section 6015(f). Rev. Proc. 2013-34, sec. 4.01. Those requirements are: (1) the requesting spouse filed a joint return for the taxable year for which relief is sought, (2) relief is not available to the requesting spouse under section 6015(b) or (c), (3) the claim for relief is timely filed, (4) no assets were transferred between the spouses as part of a fraudulent scheme, (5) the nonrequesting spouse did not transfer disqualified assets to the requesting spouse, (6) the requesting spouse did not knowingly participate in the filing of a fraudulent joint return, and (7) absent certain enumerated exceptions, the tax liability from which the requesting spouse seeks relief is attributable to an item of the nonrequesting spouse. Id.

**[*14]** The only threshold requirement in dispute is section 4.01(4). Respondent contends that Lots 12 and 13 were transferred between petitioner and Mr. Contreras as part of a fraudulent scheme. Petitioner argues that the assets were transferred pursuant to a court-ordered divorce decree judgment subject to the IRS liens of record and were therefore not part of a fraudulent scheme.

Section 1.6015-1(d), Income Tax Regs., states that a "fraudulent scheme includes a scheme to defraud the Service or another third party".[2] The basic badges of fraud include an intent to misrepresent, conceal, or hide information from a party. See Spies v. United States, 317 U.S. 492, 499 (1943); Recklitis v. Commissioner, 91 T.C. 874, 910 (1988). This Court has previously found there to be a fraudulent scheme when spouses transferred property with the intent to hide such transfers. See Chen v. Commissioner, T.C. Memo. 2006-160, 2006 WL 2270402, at *5 (finding that transfers to "hide the trail of fraud" and fraudulent intent precluded relief under section 6015(f)). Here the transfer was made to satisfy a judicial foreclosure due to Mr. Contreras' failure to pay petitioner $127,050 as awarded in the divorce decree. The transfer was made with the assistance and guidance of petitioner's divorce attorney. It was recorded publicly

---

[2]Rev. Proc. 2013-34, sec. 4.01, 2013-43 I.R.B. 397, 399-403, does not define "fraudulent scheme".

[*15] in Lincoln County and was subject to public inspection. The Court finds there was no intent to misrepresent, conceal, or hide this transaction from the IRS. Rather, the intent of the transfer was to satisfy a court-ordered judgment pursuant to the divorce decree and subject to the IRS liens of record. Accordingly, petitioner satisfies the threshold requirements.

II.    Streamlined Determination Elements

If the threshold requirements are satisfied, Rev. Proc. 2013-34, sec. 4.02, sets forth the following requirements that a requesting spouse must satisfy to qualify for a streamlined determination by the Commissioner granting relief under section 6015(f): (1) the requesting spouse is no longer married to the nonrequesting spouse on the date the IRS makes its determination, (2) the requesting spouse will suffer economic hardship if relief is not granted, and (3) in the case of an underpayment, the requesting spouse did not know or have reason to know that the nonrequesting spouse would not or could not pay the tax reported on the joint return as of the date the return was filed or the date the requesting spouse reasonably believed the return was filed. The requesting spouse must establish she satisfies each of the three elements to receive a streamlined determination granting relief. Rev. Proc. 2013-34, sec. 4.02.

**[\*16]** A.    <u>Marital Status</u>

For purposes of this element a requesting spouse will be treated as being "no longer married to the nonrequesting spouse" if the requesting spouse is divorced from the nonrequesting spouse.  <u>See</u> Rev. Proc. 2013-34, sec. 4.03(2)(a)(i).

The 75th Judicial District Court of Liberty County, Texas, granted petitioner and Mr. Contreras a divorce in October 2011.[3]  They were divorced both before petitioner filed her request for innocent spouse relief and before she filed joint Federal income tax returns with Mr. Contreras.  Accordingly, petitioner satisfied this element.

B.    <u>Economic Hardship</u>

Economic hardship exists if satisfaction of the tax liability, in whole or in part, would result in the requesting spouse's being unable to meet his or her reasonable basic living expenses.  Rev. Proc. 2013-34, sec. 4.03(2)(b), 2013-43 I.R.B. at 401.  The requesting spouse would suffer economic hardship if two tests

---

[3]Under Texas State law a marriage is void "if entered into when either party has an existing marriage to another person".  Tex. Fam. Code Ann. sec. 6.202(a) (West 2017).  However, once the prior marriage is dissolved the later marriage becomes valid after the date of dissolution if the parties have lived together and represented themselves as being married.  <u>Id.</u> sec. 6.202(b).  Therefore, petitioner and Mr. Contreras' marriage was valid after the date of his divorce from his common law wife, February 4, 2005.

[*17] are met: (1) either (a) the requesting spouse's income is below 250% of the Federal poverty level or (b) the requesting spouse's monthly income exceeds the requesting spouse's reasonable basic monthly living expenses by $300 or less and (2) the requesting spouse does not have assets from which the requesting spouse can make payments toward the tax liability and still meet reasonable basic living expenses. Id. If the two tests are not met, the Commissioner considers all facts and circumstances in determining whether the requesting spouse will suffer economic hardship if relief is not granted. Id. A requesting spouse's current income, expenses, assets, age, employment status or history, and ability to earn are considered to determine whether the requesting spouse will face economic hardship. Id.; see sec. 301.6343-1(b)(4), Proced. & Admin. Regs.

Petitioner relies on child support and Government assistance to meet her basic living expenses. While she has some education, she was unemployed throughout the marriage and was able to secure only part-time employment for a brief period after the divorce. Petitioner's approximate monthly income is $3,371.66, and she has monthly expenses of approximately $4,600. Petitioner's monthly expenses exceed her monthly income. Petitioner is behind on her property taxes and other personal liabilities because of a lack of income. Petitioner's approximate monthly income is below 250% of the Federal poverty

[*18] guidelines. Respondent contends that petitioner could seek gainful employment. Even if wages were imputed to petitioner at her historical earning levels, her income would still fall below the Federal poverty guidelines. Accordingly, petitioner has met the first prong of the two-part test.

The second prong of the test requires consideration of whether petitioner has any assets from which she can make payments towards the tax liabilities and still meet reasonable basic living expenses. Respondent contends that petitioner can satisfy her liabilities through the sale of Lots 12 and 13. Respondent also contends that only the joint liabilities for 2006 through 2009 would be subject to collection through the District Court action because those were the only years for which tax was assessed before the date of the property transfer. This position is contrary to the position taken by the U.S. Department of Justice in the pending foreclosure action. The U.S. Department of Justice is seeking foreclosure on Lots 12 and 13 to satisfy the Federal tax liens for both petitioner and Mr. Contreras. This case concerns only whether petitioner should be afforded relief from joint and several liability under section 6015(f) and does not extend to the validity or scope of the lien subject to judicial foreclosure proceedings in the District Court. Petitioner owns both Lots 12 and 13 which she acquired by warranty deed subject to the Federal lien. The action in the District Court was filed before the transfer of

[*19] property to petitioner and has been amended to include not only joint liabilities for 2006 through 2009 totaling $298,191.47 but also Mr. Contreras' 2010 through 2012 liabilities totaling $102,406.30.  Even if both properties were sold at their appraisal value of $382,940, there would be insufficient funds to cover the liabilities pending in the District Court of $400,597.77.  This does not consider the additional outstanding property tax liabilities petitioner still owes.  If petitioner is not afforded relief, she will be homeless and without sufficient income to provide for her basic living needs.  The Court finds that she satisfies this element.

C.    Knowledge

In an underpayment case knowledge exists when the requesting spouse knew or had reason to know the nonrequesting spouse would not or could not pay the tax liability at the time of filing the joint return.  Rev. Proc. 2013-34, sec. 4.03(2)(c)(ii).  The requesting spouse will not satisfy this element if, on the facts and circumstances, it was not reasonable for the requesting spouse to believe the nonrequesting spouse would or could pay the reported tax liability.

Factors considered when determining whether the requesting spouse knew or should have known the nonrequesting spouse would or could not pay the tax liability include:  (1) the requesting spouse's level of education, (2) any deceit or

[*20] evasiveness of the nonrequesting spouse, (3) the requesting spouse's degree of involvement in the activity generating the tax liability or the household or business finances, (4) the requesting spouse's business or financial expertise, and (5) the presence of lavish or unusual expenditures relative to past spending levels. Id. sec. 403(2)(c)(iii), 2013-43 I.R.B. at 402.

In 2013 at the time of signing the returns petitioner had been divorced from Mr. Contreras for almost 17 months. She did not know Mr. Contreras' employment status or earnings. She did not have any involvement with Mr. Contreras' business. Under the circumstances it was not unreasonable for petitioner to believe Mr. Contreras would pay the liabilities as he had before. However, petitioner did have knowledge that Mr. Contreras failed to pay the amount awarded under the divorce decree. At the time of signing the returns, she was also aware that the U.S. Department of Justice sought foreclosure of her homestead interest in satisfaction of Mr. Contreras' liabilities.

Notwithstanding the requesting spouse's knowledge or beliefs, that knowledge may be negated if the nonrequesting spouse abused the requesting spouse or maintained control of the household finances by restricting the requesting spouse's access to financial information such that the nonrequesting spouse's actions prevented the requesting spouse from questioning or challenging

[*21] payment of the liability.  Id. sec. 4.03(2)(c)(ii).  Rev. Proc. 2013-34, sec. 4.03(2)(c)(iv), states that "[a]buse comes in many forms and can include physical, psychological, sexual, or emotional abuse, including efforts to control, isolate, humiliate, and intimidate the requesting spouse, or to undermine the requesting spouse's ability to reason independently and be able to do what is required under the tax laws."  The Court takes all facts and circumstances into account in determining the presence of abuse.  Id. sec. 4.01.  A requesting spouse must establish that:  (1) she was the victim of abuse before the return was filed and (2) as a result of that abuse she was not able to challenge the treatment of any items on the return or was not able to question the payment of any balance due reported on the return, for fear of the nonrequesting spouse's retaliation.  Id. sec. 4.01(7)(d).  This Court requires substantiation, or at a minimum, specificity, with regard to allegations of abuse.  See Nihiser v. Commissioner, T.C. Memo. 2008-135.  A generalized claim of abuse is insufficient.  See Thomassen v. Commissioner, T.C. Memo. 2011-88, aff'd, 564 F. App'x 885 (9th Cir. 2014); Knorr v. Commissioner, T.C. Memo. 2004-212.  To carry this burden, it is helpful for the requesting spouse to provide corroborating evidence or substantiation of the alleged abuse.  See Thomassen v. Commissioner, T.C. Memo. 2011-88; see also Deihl v. Commissioner, T.C. Memo. 2012-176, 2012 WL 2361518, at *13

[*22] ("Abuse is a genuine reason to grant relief from joint and several liability, and we are sensitive to the legal and emotional issues related thereto."), aff'd, 603 F. App'x 527 (9th Cir. 2015).

Mr. Contreras' controlling and abusive behavior hindered petitioner's ability to question the underpayment and to participate meaningfully in the returns. Petitioner credibly testified to years of abuse, which continued even after the marriage ended. Her credible testimony was supported by numerous police reports documenting the volatile home environment. In addition their daughter testified that her father's abuse caused them to leave the home several times. The Court found the daughter's testimony forthright, credible, and supportive of petitioner's claim that she is a victim of spousal abuse. Petitioner's claim of abuse is further supported by the divorce decree, which included a protective clause for petitioner and her children. This clause was in place at the time the joint returns were signed. She was not a willing participant in filing the joint returns, but rather a victim still being controlled by her ex-husband's actions. Petitioner attempted to question the joint Federal returns but was redirected to counsel paid for by her ex-husband. She signed the returns for 2006 and 2007 "as to form" indicating she did not understand the contents of the returns. Mr. Contreras' abusive and controlling

[*23] behavior prevented petitioner from questioning his ability to pay the liabilities and to participate meaningfully in filing the joint returns.

After the divorce, petitioner did not have knowledge of Mr. Contreras' inability to pay and reasonably relied on her past experiences. Mr. Contreras controlled the records and finances with respect to his construction business, which was the only source of income during the years in issue. Years of abuse and control prevented petitioner from adequately questioning the underpayments. Accordingly, the Court finds petitioner satisfies this element.

III.    Conclusion

The Court finds that petitioner is entitled to relief from joint and several liability under section 6015(f) under a streamlined determination. The Court has considered all the other arguments made by the parties, and to the extent not discussed above, finds those arguments to be irrelevant, moot, or without merit.

To reflect the foregoing,

Decision will be entered

for petitioner.