# United States Tax Court

T.C. Memo. 2025-91

LISA MARIE WALSH,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 4460-22.                                 Filed August 26, 2025.

————

Lisa Marie Walsh, pro se.

*Brian P. Beddingfield, Nathan C. Johnston*, and *James J. Yeh*, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

LANDY, *Judge*: Petitioner, Lisa Marie Walsh, seeks relief from joint and several liability under section 6015[1] with respect to 2011 through 2016 (years in issue). The issues for decision are whether Ms. Walsh is entitled to relief (1) under either section 6015(b) or (c) relating to understatements of income tax for 2012 and 2013 or (2) under section 6015(f) relating to underpayments of income tax for the years in issue. We hold that Ms. Walsh is not entitled to relief under section 6015(b), (c), or (f) for the years in issue.

————

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure. All dollar amounts are rounded to the nearest dollar.

[*2]                              FINDINGS OF FACT

The following facts are derived from the Stipulation as to the Administrative Record, the First Stipulation of Facts, the Exhibits attached to both stipulations, the three Exhibits admitted at trial, and the testimony of Ms. Walsh and Internal Revenue Service (IRS) Revenue Agent C. Kim (RA Kim).

I.    *Marriage and the Control of Household Finances*

Ms. Walsh married Brendan Walsh on April 24, 1999. The couple share two children. Ms. Walsh graduated from high school and had no formal education beyond that. Notwithstanding, Ms. Walsh obtained a real estate agent's license, and in November 2011, started a parasol business called Persolé, LLC (Persolé). During the couple's marriage, Mr. Walsh was the higher income earner, making approximately $30,000 a month from his insurance business. Meanwhile, Ms. Walsh was primarily a stay-at-home parent, but she earned income from Persolé, as an interior designer, and as a real estate agent. Ms. Walsh was responsible for paying household utility bills and children-related expenses.

In 2006 the Walshes purchased a newly constructed, five-bedroom, five-bath, 4,500-square-foot single family home in Novato, California (Novato Property), for approximately $1.4 million. The Walshes lived at the Novato Property and used it as their family home until they separated in 2016. The Walshes were members at the Marin County Country Club, held season tickets to San Francisco Giants baseball games, and owned and drove a Maserati and a BMW. During the years in issue both children attended private school.

After discovering Mr. Walsh's alleged infidelity, Ms. Walsh, in January 2016, signed a lease for an apartment in Newport Beach, California, and moved out of the Novato Property. At the time of trial Ms. Walsh resided at the Newport Beach apartment where she lived with her son, and she periodically earned income from short-term rental of the apartment.

II.   *Preparation and Filing of Tax Returns*

During their marriage and throughout the years in issue the Walshes filed joint Forms 1040, U.S. Individual Income Tax Return. The couple's joint Forms 1040 for the years in issue were prepared by Patrick J. Carlin, a certified public accountant. During the pendency of

[*3] Ms. Walsh's request for relief Mr. Carlin provided a written statement to the IRS stating that Ms. Walsh granted him permission to electronically file (e-file) the joint Form 1040 for each of the years in issue. Ms. Walsh helped Mr. Carlin prepare the joint Forms 1040 by gathering and submitting to him information regarding items of income and expenses related to her businesses, home mortgage interest statements, and property tax documents.

The Walshes have a history of noncompliance with the federal income tax laws. They failed to timely file their income tax returns, pay the liabilities shown on the tax returns, and appropriately report their income tax liabilities for tax years 2012 and 2013, leading to both understatements and underpayments of income tax for those two years. While they timely filed returns and did not have any understatements for 2011 or 2014 through 2016, there were underpayments of tax which have not been paid. The underpayments on their joint Forms 1040 for the years in issue were $42,644, $41,552, $10,932, $22,239, $36,939, and $19,012, respectively. At the time of trial the following income tax liabilities were due:

| Year | Total Amount Due |
|------|------------------|
| 2011 | $67,186 |
| 2012 | 74,049 |
| 2013 | 20,170 |
| 2014 | 38,474 |
| 2015 | 63,050 |
| 2016 | 26,054 |

During the IRS's review of Ms. Walsh's request for innocent spouse relief, it determined that the amounts due for 2012, 2014, 2015, and 2016 were fully attributable to Mr. Walsh. The IRS further determined that $37,387 of the underpayment for 2011 and $4,504 of the deficiency for 2013 were attributable to Ms. Walsh.

III.    *Income Tax Examination and Tax Court Proceedings*

On June 20, 2014, the IRS selected the Walshes' 2011 joint Form 1040 for examination. Thereafter, on February 27, 2015, the IRS selected the Walshes' returns for 2012 and 2013 for examination. Ms. Walsh testified that she was not involved with the examination. Conversely, RA Kim, who conducted the examination, testified that she spoke with Ms. Walsh on multiple occasions during the examination.

**[\*4]** On June 9, 2016, the IRS issued the Walshes a Notice of Deficiency (Notice) determining deficiencies in income tax, section 6651(a)(1) additions to tax, and section 6662(a) accuracy-related penalties for 2011 through 2013. The Walshes hired Edward I. Kaplan to represent them, and on September 6, 2016, Mr. Kaplan timely filed a petition to this Court seeking redetermination of the deficiencies, additions to tax, and penalties. *Walsh v. Commissioner*, No. 19641-16 (T.C. filed Sept. 6, 2016).

On September 10, 2018, the IRS and Mr. Kaplan, on the Walshes' behalf, executed a Stipulation of Settled Issues resolving all issues raised in the Notice. This Court entered a decision related to 2011 through 2013 on February 14, 2019. The resulting deficiencies and section 6651(a)(1) additions to tax were as follows:

| Year | Deficiency | Addition to Tax/Penalty | |
| | | Section 6651(a)(1) | Section 6662(a) |
|---|---|---|---|
| 2011 | — | — | — |
| 2012 | $2,536 | $634 | — |
| 2013 | 748 | 187 | — |

Neither Mr. Kaplan nor Ms. Walsh raised the issue of innocent spouse relief in the prior deficiency case. While Ms. Walsh acknowledged that she was a copetitioner in the prior proceedings, she maintained that she did not receive any information related to the IRS examination or the prior Court case.

IV. *Separation and Divorce*

On January 1, 2017, Ms. Walsh separated from Mr. Walsh, and on December 12, 2017, Ms. Walsh filed a petition for dissolution of marriage in the Superior Court of California, County of Orange (Superior Court). Mr. Walsh was served the summons and petition for dissolution of marriage on January 6, 2018. On September 28, 2018, the Superior Court entered a Stipulation and Order that ordered Mr. Walsh to pay Ms. Walsh $156 per month in child support and $8,660 per month in spousal support, payable in semi-monthly installments beginning October 15, 2018.

On June 17, 2021, the Superior Court entered a judgment of dissolution that dissolved the Walshes' marriage, awarded Ms. Walsh spousal support of $6,400 per month and arrearages of $38,970, and determined that the Walshes' Form 1040 liabilities were joint and

[*5] several liabilities to be divided equally between the parties.[2] The Superior Court specifically stated that "[t]o the extent that either [Ms. Walsh or Mr. Walsh] pays more than half on this [federal tax] debt from this portion forward, the other party shall indemnify and pay the other party their one half thereof, subject to proof and subject to any claims and defenses that either may have with the taxing authorities." The Superior Court further stated that "[i]f either party seeks to compromise the amounts with the [IRS], they shall first notify the other, invite them to join in the discussions remembering that until fully paid or otherwise ordered, the fiduciary duties they have to the other under the [California] Family Code remain."

During the divorce proceedings, Ms. Walsh accepted responsibility for the Form 1040 liabilities for the years in issue. She testified that she and Mr. Walsh would have been able to maintain their affluent lifestyle even if they paid their tax debt. The Superior Court found that the Walshes' failure to pay their federal tax liabilities allowed them to maintain their lavish lifestyle.

V.     *Petitioner's Tax Compliance After Legal Separation*

Ms. Walsh filed Forms 1040 for 2017 through 2019 with the filing status of married filing separate and for taxable year 2020 with the filing status of single.[3] At the time of trial Ms. Walsh owed the following tax liabilities for 2017 through 2020:

| Year | Tax Liability at the Time of Trial |
|------|-----------------------------------:|
| 2017 | $809 |
| 2018 | 3,004 |
| 2019 | 22,064 |
| 2020 | 8,931 |

Ms. Walsh has no outstanding tax liability for taxable year 2021. As of the date of trial Ms. Walsh had not filed her 2022 Form 1040.

---

[2] The Superior Court also awarded Ms. Walsh one-half of Mr. Walsh's section 401(k) retirement account, valued at $103,024, and one-half of Mr. Walsh's pension account, valued at $98,256. In the property division Ms. Walsh was awarded an early trust distribution of $20,000, $16,155 from the joint trust account, and an equalization payment of $122,751.

[3] The Forms 1040 for 2017 through 2020 were filed late, on March 3 and 4 and October 19, 2020, and March 14, 2022, respectively.

**[*6]** VI. *Ms. Walsh's Request for Relief from Joint and Several Liability*

On or around May 13, 2020, Ms. Walsh filed a request for innocent spouse relief. No copy of Form 8857, Request for Innocent Spouse Relief, is in the record. The Commissioner's workpaper, which the parties stipulated, states that Ms. Walsh indicated on Form 8857 that she did not know whether the joint Forms 1040 showed balances due to the IRS, and that "[she doesn't] know how to read a tax return." Ms. Walsh maintained that she did not become aware of the "extraordinary tax bill" until January 2020. Ms. Walsh also claimed that Mr. Walsh changed the couple's mailing address with the IRS from the Novato Property to his office address in San Francisco (Office Address) without her knowledge in or around 2012.

When Ms. Walsh requested innocent spouse relief, she reported receiving monthly income of $11,851, consisting of $8,660 in spousal support, $504 in self-employment income, and $2,687 in unemployment benefits. Moreover, she reported monthly expenses of $10,639, consisting, inter alia, of rent for a 3-bedroom, 2.5-bath apartment of $4,700, utility expenses of $610, and credit card payments of $1,059, all of which the IRS determined to be significantly above the allowable expense amount. In calendar year 2022, excluding any self-employment income and the income from short-term apartment rentals, Ms. Walsh received $133,400 in income, consisting of $85,200 in spousal support and arrearages and $48,200 of retirement distributions.

On Form 8857 Ms. Walsh did not indicate that either she or any members of her family were victims of domestic violence or physical abuse; however, she did indicate that Mr. Walsh made her afraid to disagree, criticize, or insult him because he made the financial decisions for the family. At trial Ms. Walsh stated that Mr. Walsh was emotionally and financially abusive. Ms. Walsh did not contend that she was suffering from a mental or physical health problem when the Forms 1040 were filed or when she filed Form 8857 for the years in issue.

In response to Ms. Walsh's request for innocent spouse relief, Mr. Walsh filed Form 12508, Questionnaire for Non-Requesting Spouse. He stated that Ms. Walsh (1) provided her wage information to Mr. Carlin for inclusion on the couple's joint Forms 1040; (2) gave tax documents to Mr. Carlin, who prepared the joint Forms 1040; (3) had full knowledge of and access to the couple's assets, including their joint account; and (4) paid bills out of the joint account and made monetary transfers from the joint account to her separate bank accounts.

**[\*7]** Mr. Walsh also asserted that Ms. Walsh "always signed the 'permission to e-file'" permitting Mr. Carlin to file the couple's joint Forms 1040 for the tax years in issue.

On November 15, 2021, the IRS issued Ms. Walsh a final determination denying her request for relief for the years in issue. On February 11, 2022, Ms. Walsh, while residing in California, timely filed her Petition with this Court disputing the final determination.

## OPINION

I. *Jurisdiction*

Our Court is a court of limited jurisdiction, and we can exercise our jurisdiction only to the extent provided by Congress. § 7442; *Judge v. Commissioner*, 88 T.C. 1175, 1180–81 (1987); *Naftel v. Commissioner*, 85 T.C. 527, 529 (1985); *see also* Rules 13(b), 320(b). Pursuant to section 6015(e), we have jurisdiction to review a stand-alone petition for innocent spouse relief when the taxpayer files a petition no later than the close of the 90th day after the Commissioner mails a final determination denying the requesting spouse's claim for relief. *See* § 6015(e)(1)(A)(ii), (e)(1)(A)(i)(I). Ms. Walsh timely filed a stand-alone Petition with this Court, and thus we have jurisdiction to review the IRS's determination against relief. The Court provided Mr. Walsh with a notice of his right to intervene as a party to this case under section 6015(e)(4) and Rule 325, but he did not intervene.

II. *Relief from Joint and Several Liability*

Married taxpayers may elect to file a joint federal income tax return. § 6013(a). The tax on a joint return is computed on the spouses' aggregate income. Each spouse is fully responsible for the accuracy of the return and jointly and severally liable for the entire amount of tax shown on the return or found to be owed. § 6013(d)(3); *Pullins v. Commissioner*, 136 T.C. 432, 437 (2011). Pursuant to section 6015, a spouse may be relieved from joint and several liability if certain conditions are met. *See, e.g.*, § 6015(b), (c), (f); *see also Pullins*, 136 T.C. at 437. We apply a de novo standard of review to any determination the Commissioner makes under section 6015. *See* § 6015(e)(7); *see also Porter v. Commissioner*, 132 T.C. 203, 210 (2009), *superseded in part by statute*, Taxpayer First Act, Pub. L. No. 116-25, § 1203(a)(1), 133 Stat. 981, 988 (2019). For section 6015 petitions filed on or after July 1, 2019, however, our scope of review is limited. *See* § 6015(e)(7); *see also*

[*8] Taxpayer First Act § 1203(a)(1), (b), 133 Stat. at 988; *Sutherland v. Commissioner*, 155 T.C. 95, 96–97, 105 (2020).

Because Ms. Walsh petitioned this Court on February 11, 2022, section 6015(e)(7) applies as amended, and we must decide this case on (1) the administrative record, which has been stipulated into evidence (and consists of Exhibits 1-J through 18-J); (2) any additional newly discovered or previously unavailable evidence, which also has been stipulated into evidence (and consists of Exhibits 19-J to 33-J and the three trial Exhibits admitted into evidence); and (3) the testimony taken at trial, which was not part of the administrative record. *See, e.g., Freman v. Commissioner*, T.C. Memo. 2023-10, at *10; *Sleeth v. Commissioner*, T.C. Memo. 2019-138, at *3, *aff'd*, 991 F.3d 1201 (11th Cir. 2021). Ms. Walsh, as the requesting spouse, bears the burden of proving that she is entitled to relief. *See* Rule 142(a); *Porter*, 132 T.C. at 210.

III.    *Relief Under Section 6015 for 2011 Through 2013*

Under section 6015(a), a spouse may seek relief from joint and several liability under section 6015(b) or, if eligible, may allocate liability according to provisions set forth in section 6015(c). A taxpayer who does not qualify for relief under section 6015(b) or (c) may seek equitable relief under section 6015(f). § 6015(f)(1)(B); *Porter*, 132 T.C. at 206.

The Walshes underpaid the income tax liabilities reported on their joint Forms 1040 for 2011 through 2013 and understated the liabilities for 2012 and 2013. The Walshes' returns were selected for examination resulting in the issuance of the Notice determining deficiencies, additions to tax, and section 6662(a) accuracy-related penalties for 2011 through 2013. The Walshes timely petitioned this Court for review, and the Court entered a decision related to the deficiencies for 2011 through 2013 on February 14, 2019. Consequently, Ms. Walsh may be eligible for relief under section 6015(f) for 2011 and section 6015(b), (c), or (f) for 2012 and 2013, unless she is barred by the doctrine of res judicata.[4] For the reasons below, we find that Ms. Walsh

---

[4] In *Thurner v. Commissioner*, 121 T.C. 43, 52 (2003), we held that "a claim for equitable relief under section 6015(f) is subject to the same standards for the application of the doctrine of res judicata that Congress imposed under section 6015(g)(2) with respect to claims for relief under section 6015(b) and (c)."

**[\*9]** is ineligible for relief from joint and several liability for 2011 through 2013.

    A.    *The Applicability of the Doctrine of Res Judicata*

Section 6015(g)(2) provides:

> In the case of any election under subsection (b) or (c) or of any request for equitable relief under subsection (f), if a decision of a court in any prior proceeding for the same taxable year has become final, such decision shall be conclusive except with respect to the qualification of the individual for relief which was not an issue in such proceeding. The exception contained in the preceding sentence shall not apply if the court determines that the individual participated meaningfully in such prior proceeding.

Res judicata is an affirmative defense developed by courts to bar relitigation of the same cause of action. *Kechijian v. Commissioner*, T.C. Memo. 2022-127, at \*8. "Under the judicial doctrine of res judicata, when a court of competent jurisdiction enters a final judgment on the merits of a cause of action, the parties to the action are bound by every matter that was or could have been offered and received to sustain or defeat the claim." *Deihl v. Commissioner*, 134 T.C. 156, 160 (2010) (citing *Commissioner v. Sunnen*, 333 U.S. 591, 597 (1948)). This doctrine is applicable to Tax Court proceedings. *Kechijian*, T.C. Memo. 2022-127, at \*8. Because federal income tax is determined annually and each year is a separate cause of action, applying res judicata bars subsequent proceedings involving the same tax year. *Deihl*, 134 T.C. at 160 (citing *Commissioner v. Sunnen*, 333 U.S. at 597–98; *see also Kechijian*, T.C. Memo. 2022-127, at \*8.

For res judicata purposes, an agreed or stipulated judgment is a judgment on the merits. *Deihl*, 134 T.C. at 160 (citing *Baker v. IRS* (*In re Baker*), 74 F.3d 906, 910 (9th Cir. 1996) (per curiam) (and cases cited thereat)). Under the Supreme Court's analysis in *Sunnen*, four conditions must be met to preclude the relitigation of a claim:

> (1) the parties in each action must be identical (or at least be in privity); (2) a court of competent jurisdiction must have rendered the first judgment; (3) the prior action must have resulted in a final judgment on the merits; and (4) the

**[\*10]** same cause of action or claim must be involved in both suits.

*Koprowski v. Commissioner*, 138 T.C. 54, 62 (2012) (citing *Commissioner v. Sunnen*, 333 U.S. at 597–98); *see also Breland v. Commissioner*, 152 T.C. 156, 160–61 (2019), *aff'd*, No. 23-12345, 2024 WL 2796450 (11th Cir. May 31, 2024). "Once these conditions are met, each party is prohibited from raising any claim or defense that was or could have been raised as part of the litigation over the cause of action in the prior case." *Koprowski*, 138 T.C. at 62.

In this case the four conditions are satisfied: (1) Ms. Walsh was a petitioner in the prior deficiency case before this Court, *see Walsh v. Commissioner*, No. 19641-16; (2) this Court had jurisdiction over 2011 through 2013 in the prior case and rendered judgment for those years; (3) this Court entered a decision that was a final judgment on the merits; and (4) Ms. Walsh's request for innocent spouse relief relates to the same liabilities for the same taxable years that were at issue in the prior proceeding. Accordingly, the doctrine of res judicata bars relitigation of the 2011 through 2013 tax liabilities unless the section 6015(g)(2) exception applies.

### B.     *Whether Section 6015(g)(2) Exception Applies*

Under section 6015(g)(2) Ms. Walsh may avoid the preclusive effect of res judicata if in the prior deficiency case (1) her claim for innocent spouse relief was not an issue and (2) she did not participate meaningfully. *See Koprowski*, 138 T.C. at 65; *Deihl*, 134 T.C. at 161; *Kechijian*, T.C. Memo. 2022-127, at \*10; *see also* Treas. Reg. § 1.6015-1(e) (providing that res judicata applies "if relief under section 6015 was at issue in the prior proceeding, or if the requesting spouse meaningfully participated in that proceeding and could have raised relief under section 6015"). "[A] taxpayer that participated meaningfully in a prior proceeding is barred from requesting relief under section 6015 for the same taxable year after the decision of the Court has become final." *Harbin v. Commissioner*, 137 T.C. 93, 98 (2011). Ms. Walsh bears the burden of proving by a preponderance of the evidence that she did not participate meaningfully in the prior proceeding. *See Deihl*, 134 T.C. at 162 (citing *Monsour v. Commissioner*, T.C. Memo. 2004-190). Ms. Walsh did not raise the issue of innocent spouse relief in the previous deficiency case. Accordingly, we must determine whether she "participated meaningfully" in the prior Tax Court proceeding within the meaning of section 6015(g)(2).

[*11] Meaningful participation is not defined in section 6015(g)(2) or in the relevant Treasury regulations. *Deihl*, 134 T.C. at 162. Instead, we "look[] to the totality of the facts and circumstances to determine whether a taxpayer has participated meaningfully in a prior proceeding." *Harbin*, 137 T.C. at 98. The following factors are particularly probative of meaningful participation:

> (1) exercising exclusive control over the handling of the prior proceeding; (2) having a high level of participation in the prior proceeding (e.g., signing court documents and participating in settlement negotiations); and (3) having the opportunity to raise a claim for relief from joint and several liability in the prior proceeding.

*Kechijian*, T.C. Memo. 2022-127, at *11 (first citing *Harbin*, 137 T.C. at 98; and then citing *Rogers v. Commissioner*, T.C. Memo. 2018-53, at *97–98, *aff'd*, 9 F.4th 576 (7th Cir. 2021)); *see also Deihl*, 134 T.C. at 164–65; *Thurner*, 121 T.C. at 53; *Huynh v. Commissioner*, T.C. Memo. 2006-180, *aff'd*, 276 F. App'x 634 (9th Cir. 2008). We look to the "taxpayer's level of education and sophistication[,] . . . her knowledge or understanding of the activities giving rise to the deficiency," and whether the "taxpayer was represented by counsel and communicated with counsel at the prior proceeding." *Rogers*, T.C. Memo. 2018-53, at *98–99 (first citing *Harbin*, 137 T.C. at 98; then citing *Deihl*, 134 T.C. at 163; then citing *Monsour*, T.C. Memo. 2004-190; and then citing *Deihl*, 134 T.C. at 164).

Ms. Walsh participated meaningfully through her counsel in the prior Tax Court proceeding. In *Kechijian*, T.C. Memo. 2022-127, at *12, this Court found that a requesting spouse represented by counsel in a prior Tax Court case had meaningfully participated because competent legal counsel acted on her behalf. The requesting spouse's lack of direct participation in the prior proceeding did not affect whether she meaningfully participated. *Compare Rogers*, T.C. Memo. 2018-53, at *99 (finding that the requesting spouse meaningfully participated through counsel because her J.D. and M.B.A. degrees, tax and accounting background, and knowledge of her husband's business activities that gave rise to the underpayment all demonstrated she understood the proceedings), *with Deihl*, 134 T.C. at 158, 164 (finding that the requesting spouse did not meaningfully participate despite being represented by counsel because she did not review any filings, participate in settlement negotiations, or sit in on meetings between her attorneys and the IRS, and her lawyers did not explain the meaning of

[*12] the documents filed), *and Harbin*, 137 T.C. at 99 (finding that the requesting spouse did not meaningfully participate through counsel because there was a conflict of interest in representing the parties that were in a contentious divorce and had adverse interests).

The Walshes were represented by Mr. Kaplan in the prior proceeding, and Ms. Walsh benefited from his representation. Mr. Kaplan filed the petition, executed joint stipulations, and negotiated a settlement with the IRS on the Walshes' behalf. The IRS allowed deductions for $36,921 of additional business expenses specifically related to Ms. Walsh's interior design business for 2011 because of Mr. Kaplan's representation. Consequently, the parties' settled with no deficiency in income tax, section 6651(a)(1) addition to tax, or section 6662(a) accuracy-related penalty due from petitioners for 2011. For 2012 and 2013 the parties settled with the Walshes liable for reduced tax deficiencies and section 6651(a) additions to tax but no section 6662(a) accuracy-related penalties. The parties also agreed that the deficiency for 2013 was attributable to unreported income from Ms. Walsh's business, Persolé.

Ms. Walsh's testimony that she did not participate in the prior proceedings is unconvincing and conflicts with the evidence in the record. Ms. Walsh testified that she had no knowledge of the prior Tax Court proceeding and that she was not involved with the examination that led to the issuance of the Notice underlying those proceedings. To the contrary, Ms. Walsh had personal knowledge of the items giving rise to the deficiencies in the prior case that was critical to Mr. Kaplan's representation. The deficiency for 2013 was entirely attributable to Ms. Walsh, and Mr. Kaplan was able to reduce the deficiency for 2011 to zero by securing a deduction for Ms. Walsh's business expenses, directly contradicting her statement that Mr. Kaplan represented only Mr. Walsh's interests during the prior case. No evidence established a conflict of interest in Mr. Kaplan's representation of the Walshes before this Court in the prior proceeding.

Ms. Walsh maintained that she had never met or communicated with Mr. Kaplan but then later testified that she had corresponded with him via email about the outstanding bill for his representation. She argued that the judge in the divorce proceedings found that she did not owe Mr. Kaplan for this bill because he did not represent her before the Tax Court, but that contention is specious. The Superior Court judge merely refused to make a finding of collectability of Mr. Kaplan's bill for legal services against either Ms. Walsh or Mr. Walsh because there was

**[\*13]** insufficient evidence in the record. The Superior Court opined that "it would have been quite simple to call [Mr. Kaplan] as a witness" to substantiate the nature of his representation; however, neither Mr. Walsh nor Ms. Walsh did so. Notably, Ms. Walsh also chose not to call Mr. Kaplan as a witness in this case, leaving nothing to corroborate her claims other than her own self-serving testimony and the evidence in the record.

In addition Ms. Walsh was an active participant during the examination that resulted in the issuance of the Notice in the prior deficiency case. RA Kim conducted the examination of the Walshes' 2011, 2012, and 2013 Forms 1040. RA Kim testified that Ms. Walsh called and requested examination documents in October 2015. RA Kim further testified that she held a conference call in March 2016 with Ms. Walsh to discuss the results of the examination report only three months before the issuance of the Notice.

Ms. Walsh did not provide credible evidence or testimony to corroborate her statements, and on the basis of the evidence in the record, we find that she meaningfully participated in the prior proceeding through legal counsel. Consequently, the section 6015(g)(2) exception does not apply, and the doctrine of res judicata bars her claim for relief from joint and several liability under section 6015. Accordingly, Ms. Walsh is not eligible for relief under section 6015(b), (c), or (f) for 2011 through 2013.

IV.    *Relief Under Section 6015(f) for 2014 Through 2016*

Because Ms. Walsh is not entitled to relief under section 6015 for 2011 through 2013, we now turn to whether she is entitled to relief for 2014 through 2016. As stated above, section 6015(f) provides an alternative means for innocent spouse relief for a requesting spouse who does not otherwise qualify for relief under section 6015(b) or (c). § 6015(f)(1)(B). Section 6015(f) permits relief from joint and several liability if it would be inequitable to hold the requesting spouse liable for any unpaid tax or deficiency (or any portion thereof) after considering all the facts and circumstances. § 6015(f)(1)(A); *Porter*, 132 T.C. at 206; Treas. Reg. § 1.6015-4(a). Because the liabilities for 2014 through 2016 are based solely on underpayments of income tax, Ms. Walsh is eligible for relief under section 6015(f) for only these three taxable years.

Treasury Regulation § 1.6015-4(c) directs us to Rev. Proc. 2013-34, 2013-43 I.R.B. 397, *modifying and superseding* Rev. Proc. 2003-61,

[*14] 2003-2 C.B. 296, *modifying and superseding* Rev. Proc. 2000-15, 2000-1 C.B. 447, for guidance on the section 6015(f) analysis. Although we are not bound by the eligibility guidelines set forth in Rev. Proc. 2013-34, we will analyze Ms. Walsh's request under these guidelines to ascertain whether she satisfies the requirements for relief under section 6015(f). *See Pullins*, 136 T.C. at 439; *see also Jones v. Commissioner*, T.C. Memo. 2019-139, at *13–14, *aff'd*, No. 20-70013, 2022 WL 327473 (9th Cir. Feb. 3, 2022).

Rev. Proc. 2013-34 sets forth a three-step analysis for evaluating section 6015(f) claims for relief. *See Freman*, T.C. Memo. 2023-10, at *21. The requesting spouse must first satisfy the seven threshold requirements under Rev. Proc. 2013-34, § 4.01, 2013-43 I.R.B. at 399. The requesting spouse must then satisfy either the three-part test for streamlined relief under Rev. Proc. 2013-34, § 4.02, 2013-43 I.R.B. at 400, or, if the requesting spouse does not satisfy the test for streamlined relief, the requesting spouse may still qualify for relief from joint and several liability if it would be inequitable to hold him or her liable in the light of all of the facts and circumstances under Rev. Proc. 2013-34, § 4.03, 2013-43 I.R.B. at 400. *See Freman*, T.C. Memo. 2023-10, at *21.

Ms. Walsh bears the burden of proof with respect to her request for relief under section 6015(f). *See* Rule 142(a); *Porter,* 132 T.C. at 210. For the reasons stated below, we find it would not be inequitable to hold Ms. Walsh liable for 2014 through 2016.

A.     *Threshold Requirements*

To be eligible for section 6015(f) relief, the requesting spouse must satisfy the following threshold conditions: (1) the requesting spouse must have filed a joint return for the years for which she is requesting relief; (2) relief is not available under section 6015(b) or (c); (3) the deadline for filing a claim for relief has been met; (4) the spouses made no fraudulent asset transfers; (5) the nonrequesting spouse did not transfer disqualified assets to the requesting spouse; (6) the requesting spouse did not knowingly participate in filing a fraudulent joint return; and (7) the tax liability is partially or fully attributable to the nonrequesting spouse. *See* Rev. Proc. 2013-34, § 4.01. "If the liability is partially attributable to the requesting spouse, then relief can only be considered for the portion of the liability attributable to the nonrequesting spouse." *Id.* § 4.01(7), 2013-43 I.R.B. at 399.

**[\*15]** For 2014 through 2016, the Walshes elected to file joint returns. Because the liabilities for 2014 through 2016 are based on underpayments of income tax, Ms. Walsh is not eligible for relief under section 6015(b) or (c). Further, Ms. Walsh filed a timely claim for relief for 2014 through 2016, and there is no evidence that the Walshes transferred assets as part of a fraudulent scheme, that Mr. Walsh transferred disqualified assets to Ms. Walsh, or that they knowingly filed a fraudulent return. *See* Rev. Proc. 2013-34, § 4.01(1)–(6), 2013-43 I.R.B. at 399. Finally, the parties stipulated that the income tax liabilities for 2014 through 2016 are attributable to underpayments resulting from Mr. Walsh's income. *See id.* § 4.01(7).

### B. *Streamlined Determination*

Where, as here, the threshold conditions are satisfied, Rev. Proc. 2013-34, § 4.02, sets forth circumstances under which the IRS will make a streamlined determination granting equitable relief to the requesting spouse under section 6015(f) if the requesting spouse can establish that she (1) is no longer married to the nonrequesting spouse; (2) would suffer economic hardship if relief were not granted; and (3) did not know or have reason to know that the nonrequesting spouse would not or could not pay the underpayment of tax reported on the joint income tax return. The requesting spouse must establish that she satisfies each of the three conditions to receive a streamlined determination granting relief. Rev. Proc. 2013-34, § 4.02.

#### 1. *Marital Status Requirement*

The first requirement is met if the requesting spouse is no longer married to the nonrequesting spouse. *Id.* § 4.02(1). Because Ms. Walsh received a judgment of dissolution in 2021 and is divorced, this factor favors relief.

#### 2. *Economic Hardship Requirement*

For the reasons stated below, we find that Ms. Walsh would not suffer economic hardship if relief were not granted; therefore, not all the streamlined determination conditions are satisfied. Economic hardship exists if satisfaction of the tax liability, in whole or in part, would result in the requesting spouse's being unable to meet her reasonable basic living expenses. *Id.* § 4.02(2), 4.03(2)(b), 2013-43 I.R.B at 400, 401. If denying relief would not cause the requesting spouse economic hardship, this condition for streamlined relief is not satisfied. *Id.* § 4.02(2). Where the requesting spouse's income is below 250% of the federal poverty

[*16] guidelines, this factor will weigh in favor of relief, unless the requesting spouse has assets to make payments towards the tax liability and still adequately meet any reasonable basic living expenses. *Id.* § 4.02(2), 4.03(2)(b); *see also Contreras v. Commissioner*, T.C. Memo. 2019-12, at *16–17.

Additionally, if neither of the foregoing conditions is met, then the Court will also consider additional factors such as (1) the taxpayer's age and earning potential; (2) an amount reasonably necessary for food, clothing, housing, medical expenses, and transportation; (3) the assets available to pay the taxpayer's expenses; (4) the cost of living in the taxpayer's geographical area; and (5) any other factors bearing on economic hardship. Rev. Proc. 2013-34, § 4.02(2) (citing *id.* § 4.03(2)(b) ("Whether the requesting spouse will suffer economic hardship is determined based on rules similar to those provided in Treas. Reg. § 301.6343-1(b)(4) . . . .")).

At the time of trial Ms. Walsh testified that she received $7,100 per month in spousal support, consisting of $6,400 in alimony and $700 in arrearages. Ms. Walsh also received distributions from her retirement account totaling $48,200 and earned income from renting out her apartment in 2022. Under the 2023 federal poverty guidelines, a household with two persons in the contiguous 48 states has a poverty threshold of $19,720, and 250% of that threshold is $49,300. *See* 42 U.S.C. § 9902(2); *see also* Annual Update of the HHS Poverty Guidelines, 88 Fed. Reg. 3424 (Jan. 19, 2023). Ms. Walsh's monthly income of $7,100 per month—$85,200 per year—significantly exceeds the 250% threshold. Ms. Walsh claims that her current monthly expenses total $10,639, including rent for her Newport Beach apartment, but she provided only vague assertions to corroborate that expense amount. We find that Ms. Walsh has not established that she would suffer actual economic hardship if she was required to pay any part of the tax liability for the years in issue.

Moreover, Ms. Walsh has not established that she would face present hardship if she were not granted relief. We determine that Ms. Walsh has not established that any additional factors regarding her financial position warrant a finding that it would be inequitable to maintain joint and several liability. Therefore, this condition for streamlined relief is not satisfied. Since the requirements under Rev. Proc. 2013-34, § 4.02, are conjunctive and Ms. Walsh fails to meet the economic hardship requirement of the streamlined determination, we determine that she is not entitled to a streamlined determination.

**[\*17]** C.     *Full Equitable Relief Analysis*

For cases in which the threshold conditions are met but the requesting spouse is not eligible for a streamlined determination, Rev. Proc. 2013-34, § 4.03(2), 2013-43 I.R.B at 400, sets forth seven nonexclusive factors to be considered in determining whether the requesting spouse is entitled to equitable relief under section 6015(f). Those factors are (1) the taxpayer's marital status, (2) whether the requesting spouse will suffer economic hardship absent relief, (3) whether the requesting spouse had knowledge or reason to know that the nonrequesting spouse would not or could not pay the income tax liabilities, (4) whether either spouse had a legal obligation to pay the liabilities, (5) whether the requesting spouse significantly benefited from the underpayments, (6) whether the requesting spouse has complied with income tax laws in the years following those to which the request for relief relates, and (7) the mental or physical health of the requesting spouse. Rev. Proc. 2013-34, § 4.03(2). These factors are to be weighted appropriately, and no one factor is determinative. *Id.*; *see also Thomas v. Commissioner*, 162 T.C. 9, 29 (2024) (citing *Yancey v. Commissioner*, T.C. Memo. 2017-59, at \*19 (collecting cases)).

The Commissioner contends that three factors—economic hardship, legal obligation, and mental or physical health—are neutral factors. The Commissioner concedes that the marital factor weighs in favor of relief. The Commissioner does maintain that the factors for knowledge or reason to know that the nonrequesting spouse would not or could not pay the income tax liabilities, significant benefit, and compliance with tax laws weigh against relief. We agree with the Commissioner.

1.     *Neutral Factors*

a.     *Economic Hardship*

This factor weighs in favor of relief when a failure to grant relief from joint and several liability would cause the requesting spouse to be unable to pay reasonable basic living expenses. Rev. Proc. 2013-34, § 4.03(2)(b). If denying relief would not cause the requesting spouse economic hardship, this factor is neutral. *Id.* As discussed *supra* Part IV.B.2, Ms. Walsh has not presented sufficient evidence to prove her claim of economic hardship. Therefore, this factor is neutral.

**[\*18]**  b.  *Legal Obligation*

This factor favors relief where the nonrequesting spouse has the sole obligation to pay an outstanding federal tax liability pursuant to a divorce decree or other legally binding agreement. Rev. Proc. 2013-34, § 4.03(2)(d), 2013-43 I.R.B. at 402. This factor is neutral where both spouses have such an obligation, or the divorce decree or agreement is silent as to any such obligation. *Id.* Under the terms of the divorce decree, both spouses have a legal obligation to pay one-half of the tax liability. Thus, this factor is neutral.

c.  *Mental or Physical Health*

This factor weighs in favor of relief if the requesting spouse was in poor physical or mental health when the returns from which she seeks relief were filed, or at the time she requested relief. *Id.* § 4.03(2)(g), 2013-43 I.R.B. at 403. If the requesting spouse was in neither poor mental nor physical health, this factor is neutral. *Id.* The Court also considers a taxpayer's mental and physical health at the time of trial. *See Pullins*, 136 T.C. at 454; *Bell v. Commissioner*, T.C. Memo. 2011-152, 2011 WL 2600899, at \*18. The record before us establishes that Ms. Walsh was not suffering from any mental or physical health problems when the returns were filed, when she requested relief, or at the time of trial. Accordingly, this factor is neutral.

2.  *Factor in Favor of Relief: Marital Status*

As discussed *supra* Part IV.B.1 and as conceded by the Commissioner, Ms. Walsh is divorced from Mr. Walsh. Thus, this factor weighs in favor of relief. *See* Rev. Proc. 2013-34, § 4.03(2)(a), 2013-43 I.R.B. at 400.

3.  *Factors Weighing Against Relief*

a.  *Knowledge or Reason to Know*

For underpayment cases, we determine whether the requesting spouse knew or had reason to know that the nonrequesting spouse would not or could not pay the tax liability within a reasonable time after the return was filed. *Id.* § 4.03(2)(c)(ii), 2013-43 I.R.B. at 401. This factor weighs in favor of relief if the requesting spouse reasonably expected the nonrequesting spouse to pay the tax liability reported on the return. *Id.* A reasonable expectation of payment will be presumed if the spouses submitted a request for an installment agreement to pay the tax

**[\*19]** reported as due on the return by the later of 90 days after the due date for payment of the tax, or 90 days after the return was filed. *Id.* The installment plan request must "detail the plan for paying the tax, interest, and penalties, satisfy the liability within a reasonable time, and it must not be unreasonable for the requesting spouse to believe that the nonrequesting spouse will be able to make the payments contemplated in the requested installment agreement." *Id.*

This factor, however, weighs against relief if, on the basis of the facts and circumstances, it was not reasonable for the requesting spouse to believe that the nonrequesting spouse would or could pay the tax liability reported on the return. *Id.* Relevant factors include the requesting spouse's knowledge of "the nonrequesting spouse's prior bankruptcies, financial difficulties, or other issues with the Service or other creditors," as well as knowledge of the nonrequesting spouse's inability to timely pay bills. *Id.*

The facts and circumstances analysis also includes but is not limited to

> the requesting spouse's level of education, any deceit or evasiveness of the nonrequesting spouse, the requesting spouse's degree of involvement in the activity generating the income tax liability, the requesting spouse's involvement in business or household financial matters, the requesting spouse's business or financial expertise, and any lavish or unusual expenditures compared with past spending levels.

*Id.* § 4.03(2)(c)(iii), 2013-43 I.R.B. at 402; *see Thomas*, 162 T.C. at 30; *see also Severance v. Commissioner*, T.C. Memo. 2023-101, at \*16 (finding that the requesting spouse's involvement in providing tax documents to the tax preparer, military experience, and management of the family's finances weighed against relief); *Minton v. Commissioner*, T.C. Memo. 2018-15, at \*13–15.

Taxpayers have a duty of inquiry into the amounts of their tax liabilities. *Price v. Commissioner*, 887 F.2d 959, 965 (9th Cir. 1989); *Butler v. Commissioner*, 114 T.C. 276, 284 (2000); *Wiener v. Commissioner*, T.C. Memo. 2008-230. This Court has consistently held that a requesting spouse cannot "play the 'ostrich, hiding her head in the proverbial sand.'" *Wang v. Commissioner*, T.C. Memo. 2014-206, at \*24 (quoting *Doyle v. Commissioner*, 94 F. App'x 949, 952 (3d Cir.

[*20] 2004), *aff'g* T.C. Memo. 2003-96); *see also Jones*, T.C. Memo. 2019-139, at *19. In other words, innocent spouse relief is not available to those who choose to ignore information in their possession. *Pocock v. Commissioner*, T.C. Memo. 2022-55, at *24 (first citing *Charlton v. Commissioner*, 114 T.C. 333, 340 (2000); and then citing *Sleeth*, T.C. Memo. 2019-138, at *12). Indeed, "[a] taxpayer may not obtain the benefits of joint filing status but then obtain relief from joint and several liability by ignoring or avoiding facts fully disclosed on a return she signed." *Pullins*, 136 T.C. at 444 (citing *Hayman v. Commissioner*, 992 F.2d 1256, 1262 (2d Cir. 1993), *aff'g* T.C. Memo. 1992-228).

"In determining whether a taxpayer knew or should have known that a tax liability would not be paid, we impute to a taxpayer knowledge of what she could have gleaned from tax returns she signed, had she taken the time to review them." *Hudgins v. Commissioner*, T.C. Memo. 2012-260, at *18–19 (citing *Porter v. Commissioner*, 132 T.C. at 211–12). In *Hudgins*, T.C. Memo. 2012-260, at *19–20, the Court held that the requesting spouse, who conceded that she was unaware that there was tax due at the time the return was signed, did not have a reasonable belief that the tax liability would be paid when she signed the return because she did not examine the return before signing it.

Ms. Walsh knew that the couple owed liabilities to the IRS. Although she testified that Mr. Walsh was paying $400 a month on an installment plan, she did not provide any evidence of when that installment agreement began, how long it was expected to continue, whether they were current on payments, or whether the plan was still in existence. Thus, Ms. Walsh has failed to provide the requisite information for the reasonable expectation presumption to apply. Ms. Walsh must demonstrate that she reasonably expected that the liability would be paid. She has failed to carry that burden; and to the contrary, in analyzing all the facts and circumstances, we find this factor weighs against relief.

Much like the requesting spouse in *Hudgins*, Ms. Walsh contends that she had no knowledge that the returns for the years in issue showed tax due and that she never examined the returns. Ms. Walsh not only signed the returns but was actively involved in the family finances and tax preparation. She knew that Mr. Carlin prepared their Forms 1040 because she sent him the permission to e-file the returns for 2014 through 2016. Ms. Walsh helped prepare the Forms 1040 by gathering and providing to Mr. Carlin her business income and expense information, home mortgage interest statements, and property tax

**[\*21]** documents. She had the financial and business sophistication to establish Persolé and an interior design business. She also was a licensed real estate agent and had sold at least one home at the time of trial. She had a duty to inspect the returns for the years in issue, and she failed to do so.

In addition, Ms. Walsh knew that Mr. Walsh had a history of deceiving and hiding money from the IRS. She was also aware that he had a history of not paying his debts, such as the money owed to the California Franchise Tax Board for state tax liabilities and outstanding attorney's fees due to Mr. Kaplan. Ms. Walsh was further aware that Mr. Walsh was using his business account to pay for her Maserati and other personal expenses. Given the foregoing, it was not reasonable for Ms. Walsh to believe that Mr. Walsh would or could pay the tax liabilities reported on the returns. On the basis of the foregoing, this factor weighs against relief.

Notwithstanding Ms. Walsh's knowledge of her and Mr. Walsh's underpayments for the years in issue, her knowledge may be negated, and this factor will weigh in Ms. Walsh's favor, if she proves that Mr. Walsh abused her or maintained control of the household finances. *See* Rev. Proc. 2013-34, § 4.03(2)(c)(ii). Control would be exhibited if Mr. Walsh restricted Ms. Walsh's access to financial information and prevented her from questioning or challenging payment of the liabilities. *See Thomas*, 162 T.C. at 30 (citing Rev. Proc. 2013-34, § 4.03(2)(c)(ii)); *see also Pocock*, T.C. Memo. 2022-55, at \*25. The Court considers all facts and circumstances in determining the presence of abuse, *see* Rev. Proc. 2013-34, § 4.03(2)(c)(iv), 2013-43 I.R.B. at 402, and requires substantiation, or at a minimum, specificity, regarding allegations of abuse, *Thomas*, 162 T.C. at 30-31 (citing *Nihiser v. Commissioner*, T.C. Memo. 2008-135, 2008 WL 2120983, at \*9). "A generalized claim of abuse is insufficient." *Pocock*, T.C. Memo. 2022-55, at \*26 (first citing *Thomassen v. Commissioner*, T.C. Memo. 2011-88, *aff'd*, 564 F. App'x 885 (9th Cir. 2014); and then citing *Knorr v. Commissioner*, T.C. Memo. 2004-212)).

Ms. Walsh made only general statements about Mr. Walsh's control of the tax issues by changing their IRS mailing address to the Office Address. As stated above, we find these contentions unconvincing and contrary to the evidence in the record. Ms. Walsh testified that Mr. Walsh was financially and emotionally abusive and would withhold her alimony payments, but on the basis of the evidence in the record, we find this occurred after the marriage was dissolved. Ms. Walsh did not

[*22] allege or demonstrate that Mr. Walsh was abusive during their marriage. Accordingly, Ms. Walsh's reason to know is not outweighed by the presence of abuse or financial control, and the knowledge factor weighs against relief.

b.    *No Significant Benefit Factor*

This factor considers whether the requesting spouse benefited significantly from the unpaid federal income tax liability and weighs against relief if the requesting spouse enjoyed the benefit of a lavish lifestyle because of the tax underpayment. Rev. Proc. 2013-34, § 4.03(2)(e), 2013-43 I.R.B. at 402. This factor is neutral if the tax underpayment was small. *Id.* "A significant benefit is any benefit in excess of normal support." Treas. Reg. § 1.6015-2(d). Living a lavish lifestyle is living a lifestyle in excess of normal support. *See* Rev. Proc. 2013-34, § 4.03(2)(e). Owning "luxury assets and taking expensive vacations" are examples of a lavish lifestyle that would weigh against relief. *Id.*

In *Thomas* this Court found that the requesting spouse lived a lavish lifestyle because she drove a 2013 Land Rover, owned two properties in desirable areas, and took European vacations. The Court held that this factor weighed against relief because the taxpayers' underpayments allowed them to afford an affluent lifestyle and the requesting spouse significantly benefited as a result. *Thomas*, 162 T.C. at 31–33.

Ms. Walsh and Mr. Walsh lived a lavish lifestyle between 2011 and 2016. They purchased and lived in their $1.4 million newly constructed family home from 2006 until their separation in 2017. In 2011 they purchased a Marin County Country Club membership for $25,000 and paid yearly dues for the membership thereafter. They also held season tickets to San Francisco Giants baseball games. At the time of their separation, Ms. Walsh owned a Maserati and Mr. Walsh owned a BMW. Between 2011 and 2016, Ms. Walsh's children attended private school.

The Walshes afforded their lavish lifestyle in part by not paying their income tax for 2014 through 2016. The superior court judge found that the Walshes' annual underpayments of income tax permitted them to maintain their lavish lifestyle. We similarly determine that because the Walshes did not pay their tax liabilities, they were able to maintain their lavish lifestyle for the years in issue. Accordingly, Ms. Walsh

**[\*23]** received a significant benefit because of their underpayments of income tax for the years in issue. This factor weighs against relief.

c.  *Compliance with Income Tax Laws*

This factor weighs in favor of relief if the requesting spouse complied with the income tax laws for taxable years after divorcing the nonrequesting spouse. Rev. Proc. 2013-34, § 4.03(2)(f)(i), 2013-43 I.R.B. at 402. If the requesting spouse is not in compliance, this factor will weigh against relief, unless she made a good faith effort to comply with the tax laws but was unable to fully comply. *Id.* Ms. Walsh was not in compliance and did not make a good faith effort to comply with tax laws in the years following her divorce.

The Walshes separated in January 2017, and on December 12, 2017, Ms. Walsh filed her petition for dissolution of marriage. She did not timely file her 2017 through 2020 Forms 1040 and has outstanding account balances for those years. As of the time of trial she had accumulated account balances plus accruals of $809 for 2017, $3,004 for 2018, $22,064 for 2019, and $8,931 for 2020. Further, Ms. Walsh omitted income from her 2021 Form 1040. She reported only $910 in total income, but she confirmed receiving $67,332 in alimony payments, $27,450 in unemployment compensation, a divorce equalization payment of $122,751, and a $16,155 distribution from her trust account in 2021. As of the time of trial Ms. Walsh had not filed her 2022 Form 1040.

Ms. Walsh did not provide a reason for being unable to timely file her returns for 2017 through 2020. As for her underreporting on her 2021 return, Ms. Walsh testified that she did not know that her alimony was taxable income despite her divorce decree's indicating the contrary and her reporting it as income on her returns for 2018 through 2020. Finally, Ms. Walsh has unpaid tax liabilities for the years following her divorce. Therefore, this factor weighs against relief.

V.  *Conclusion*

In summary, the only factor weighing in favor of relief for Ms. Walsh is that she is divorced. Ms. Walsh's knowledge, the fact that she benefited from her and Mr. Walsh's nonpayment of the tax liabilities, and her noncompliance with the federal income tax laws for the years following 2016 all weigh against relief. The remaining factors all are neutral. After weighing the above factors and examining the entire record before us, we conclude that Ms. Walsh failed to carry her

**[\*24]** burden and is not entitled to relief under section 6015(f) for 2014 through 2016.

All other contentions raised by the parties—to the extent not discussed—are found to be irrelevant, moot, or without merit.

To reflect the foregoing,

*An appropriate decision will be entered.*